IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE JANUARY TERM THEREOF, HELD AT CHARLES-
TON, IN THE COUNTY OF KANAWHA, COMMENC-
ING ON THE FOURTEENTH DAY OF JAN-
UARY, 1874, AND ENDING ON THE
THIRD DAY OF MARCH 1874.

## CHARLESTON.

### FORQUERAN v. DONNALLY.

#### February 23, 1874.

1874.
January Term.

1. Where a chancery suit is heard on bill and answer, and there is no replication to the answer, and the defendant has not taken depositions as if there was a replication, the answer will be taken as true, so far as it is material and relevant.

2. A purchaser of a part of a tract of land at a sheriff's delinquent tax sale, made in the year 1860, by the purchase, payment of the purchase money and delivery to him of the sheriff's receipt therefor, acquired the right, if the land was not redeemed in the manner prescribed by the 13th section of chapter 37 of the Code of Virginia, within two years from the sale, to obtain a deed in the mode and manner prescribed by the 15th and 17th sections of said chapter, without the privilege to the former owner to redeem until after the expiration of the one year from the expiration of the two years, without the deed having been made to the purchaser.

3. The right, so acquired, grew directly out of the contract of sale made in pursuance of the law under which it was made. The contract

was a civil contract. This right is an equitable right, or interest, entitled, on the failure to redeem, to ripen into a full legal title.

4. That such parts of chapter 37 of the Code of Virginia as were material and substantial parts of the contract of sale of a tract of land for taxes, sold by the sheriff, thereunder, in 1860, should be held to remain and continue in force, as to such contracts, in connection with the act of the Legislature entitled "An act providing how lands heretofore or hereafter sold, and not redeemed, shall be surveyed and conveyed," passed on the 7th day of October, 1863, notwithstanding the provisions of the 32d section of the act of the Legislature passed on the 27th day of February, 1866, entitled "An act to provide for the sale of real estate returned delinquent for the non-payment of taxes."

5. The said act of 1863 was not repealed by the said act of 1866 or by any section of said act.

6. Several statutes, *in pari materia*, and relating to the same subject, are to be taken together and compared in the construction of them, because they are considered as having one object in view and as acting on one system. And the rule applies though some of the statutes may have expired, or are not referred to in the other acts.

7. Statutes are not considered to be repealed by implication, unless the repugnance between the new provision and a former statute be plain and unavoidable.

8. A construction which repeals former statutes or laws, by implication, and divests long approved remedies is not favored by the courts.

9. Courts will not readily intend, where the Legislature enacts a general law upon a given subject and repeals an existing general law of like character, upon the same subject, that it was the intention of the Legislature, by the repeal, to deprive those who acquired just rights or interests, under the old law, of all remedy, or to extinguish their rights or interests unless such intention is manifest. But courts may properly, in such case, rather than the parties should be left without remedy, intend that the proceeding, or remedy, provided by the new law, as far as practicable, was intended by the Legislature to be applied to rights and interests acquired under the old law.

10. Where less than the whole tract of land was sold by the sheriff for delinquent taxes, in the year 1860, and a deed was made by the Recorder of the county in which such sale was had, under the said act of 1863, and proceedings had according to its provisions, after the passage of the said act of 1866, and no survey and plat of survey was made and returned, as required by said act of 1863, prior to the execution of such deed, and reference to such survey

and plat is not made in the deed as having been made and. re_
turned—such deed, for this cause, does not pass the title of the
former owner, and is void.

11. The equitable right, or interest, of the purchaser, in such case,
where he paid the purchase money and received the sheriff's re-
ceipt, was secured by the first section of the 9th article of the
Constitution of 1863.

12. While the deed aforesaid was, and is, not valid to pass title still
the equitable title or interest in the land, subject to the right of
redemption, did not become extinguished by the deed being in-
valid, but was in existence at the adoption of the Code of 1868;
and when it took effect it was competent for the Legislature to
pass laws by which the purchaser could obtain a sufficient deed
for the land purchased by him at the said tax sale. And the 24th
section of chapter 31 of the Code of 1868 does provide such
remedy; but the deed under that section must have been made
within two years from the passage of said Code, where the sale
occurred more than five years before the passage of the Code;
and the owners, their heirs and assigns, had the right to redeem at
any time before such deed was made. If the purchaser, or his
heirs or assigns, cannot show that he or they, properly procured
a proper and sufficient deed for the land purchased at said tax
sale, within two years from the 29th day of December, 1868, the
date of the passage of said Code, then it must be considered and.
held, that the equitable right or interest of the purchaser, ac-
quired by his said purchase, has been extinguished.

13. The 40th section of the 31st chapter of the Code does not cure or
validate, the deficiency or defect in the said deed, made by the
Recorder, the decree in the suit being made on the 18th day of
April, 1869, only a few days after the Code took effect, and per-
haps would not cure or validate the defect under any other cir-
cumstances.

This was an appeal by Matthew P. Wyatt and Jacob-
M. Kelly, from a decree rendered by the circuit court
of Kanawha county, on the 16th day of April, 1869, in
a suit in chancery therein pending, wherein William A.
Forqueran was complainant and the said Matthew P.
Wyatt and Jacob M. Kelly and Charles P. Brown and
Sarah A., his wife, Sally W. Craig, John Tyler and
Martha Jane, his wife, John W. Morrison and Mary
E., his wife, John D. Forqueran, Mary Rust, Susan
Forqueran, Andrew F. Donnally, William Donnally,
Lewis F. Donnally and John B. Crawford were respon-

·dents. The decree below was pronounced by the Hon. Robert S. Brown, judge of the tenth judicial circuit, under the judicial division of the State, as provided by the act passed July 17, 1868.

The facts in the suit, and the statutes and constitutional provisions, the construction of which are involved in the opinion of the court, are sufficiently set forth therein.

*Miller & Quarrier* and *John L. Cole* for the appellants.

*Smith & Knight* and *William H. Hogeman* for the appellees.

HAYMOND, PRESIDENT:

The defendants Wyatt and Kelly in their answer simply say that they "claim" one hundred and ten acres of the land in the bill mentioned, as will appear by their deed from the Recorder of Kanawha county, therewith filed marked " *W.*" The cause was heard upon this answer without any replication thereto. The defendants took no depositions, but they filed with their answer an official copy of the deed therein referred to ; and also filed copies of certain papers and proceedings in the deed mentioned. The circuit court of Kanawha county on the sixteenth day of April, 1869, rendered the decree appealed from; and in the decree, among other things, it is recited, that the cause was heard upon their answer. In the decree the court declares that "the deed made on the fourth day of April, 1866, from the Recorder of Kanawha county to the defendants Matthew P. Wyatt and Jacob M. Kelly, is void and of no effect, as in the opinion of the court at the date of said deed there was no law in force authorizing such deed to be made for lands sold for taxes prior to 1865." The deed here referred to is the same mentioned in the answer of Wyatt and Kelly. The court upon declaring the deed void provided in the same decree for partition of the land in the bill mentioned, between the other parties, excluding Wyatt and Kelly therefrom. Generally where a cause is heard on bill and answer and there is no replication to the answer,

the answer will be taken as true, as to the matters of fact material, responsive and relevant therein stated, where depositions have not been taken by defendants therein. But in this case I think it clear that Wyatt and Kelly, by their answer, in effect, only submitted to the court a simple claim based upon the deed therewith filed, exclusively, subject to the opinion of the court as to the validity and effect of the deed, taking the facts and statements therein as true. This seems to have been the view of the court below as to the effect of the answer. It appears that Andrew F. Donnally and William Forqueran, in 1833, became the joint owners, in fee simple of a tract of land containing three hundred acres, more or less, in Kanawha county—that Andrew Donnally, in his lifetime, conveyed his moiety of the land to his three sons A. F., William and Lewis F. Donnally—that Lewis F. Donnally afterwards conveyed his interest, acquired from his father, to said A. F., and William Donnally— that William Donnally died intestate and without having conveyed his moiety of the land; and the plaintiff and others are his legal heirs. This suit was brought to have partition of said tract of land between the plaintiff and others who were thereto entitled, and Wyatt and Kelly were made defendants by an amended bill in which it is alleged that they asserted some claim to the land, the nature of which was unknown to the plaintiff. The only question presented for the determination of this court is, what right, if any, Wyatt and Kelly, or either of them have in and to the land in the bill mentioned, or any part thereof under and by virtue, of the deed for the one hundred and ten acres filed with their answer, and under the laws passed by the Legislatures of Virginia and West Virginia touching the subject of lands returned delinquent and sold by a sheriff for taxes By reason of confusion in the legislation of this State, prior to the decision of this cause by the court below, in relation to the tax sales of 1860, made by sheriffs, the question presented, though important in many aspects, is

complicated and difficult of satisfactory solution. It is indispensable to a proper understanding of the subject that the various laws enacted in relation thereto, should be recurred to, and the policy and purposes of the Legislature in connection therewith, carefully considered. Owing to the great confusion of the titles to lands in many parts of this State which grew directly out of an unwise policy of the mother State (Virginia) in relation to her vacant, delinquent and other lands, at an early day, in her history and for many years subsequent thereto, the title to lands in parts of this State, as the direct result of that policy, became greatly complicated and uncertain, and I regret that in many places, at this day, much of that complication and uncertainty still exists. While this State derived great complication and uncertainty in her land titles, from the legislation and policy of the mother State, at an early day, after a careful examination of the legislation in relation to sales of land for taxes, and especially the sales made in the year 1860, I am compelled to admit, though with great regret, that some of the legislation of this State prior to and including parts of the Code of 1868, which took effect the 1st day of April, 1869, has added new and serious complications as to some lands. Notwithstanding these facts I am gratified to know that the condition of the titles to the great body of the lands within this State is much better than it was some years since. Time and the salutary operation of the statute of limitations, touching real, actions, have contributed much in bringing about this great and good result, and the legislation and organic law touching waste, forfeited and delinquent lands, have heretofore and are now contributing much in the same direction. In many parts of the State the title to lands is now well settled, and certain prior subsisting shadows and clouds have passed away, and there can be no reasonable doubt that wise and discreet legislation touching forfeited and delinquent lands, together with the statute of limitations, administered promptly,

discreetly and firmly by the courts, will soon work the same sound condition of land titles in those parts of the State where confusion and uncertainty now exist.

The 8th section of the 11th article of the first constitution of this State, which took effect June 20th, 1863, provides that "such parts of the common law and of the laws of the State of Virginia as are in force within the boundaries of the State of West Virginia, when this constitution goes into operation, and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the Legislature," &c. The 18th section of chapter 16, of the Code of Virginia of 1860, was in force within the boundaries of this State when that Constitution went into operation, and is in these words, viz : "No new law shall be construed to repeal a former law, as to any offence committed against the former law, nor as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or or any right accrued, or claim arising before the new law takes effect ; save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings ; and if any penalty, forfeiture or punishment be mitigated by any provision of the new law, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new law takes effect." This section was, and is, in no wise repugnant to the constitution, and continued in force until the Code of this State, enacted in 1868, took effect ; and the first section of chapter 166, which is the last chapter of that Code, provides that the provisions of the preceding chapters shall be in force upon, and after, the 1st day of April, 1869 ; and repeals all acts and parts of acts of a general nature in force on the day preceding that day, subject to

·such limitations as may be prescribed by law. The 2nd section of same chapter provides that "Such repeal, ex-·cept when it is otherwise provided in this act, shall not affect any act done, or forfeiture incurred, or any right ·established, accrued, or accruing before the said first day of April, eighteen hundred and sixty-nine ; or suit or proceeding, pending on that day, save only that the pro-·ceedings thereafter shall conform, as far as practicable, to ·the provisions of the foregoing chapters of this act." The 3d, 4th, 5th, 7th, 9th, 10th, 11th, 12th, 13th, 15th, 16th, 19th, 21st, 22d and 23rd sections of chapter 37 of ·the Code of Virginia of 1849, which were in force in 1860, and are contained in the Code of 1860, substan-·tially provided that when lists of real estate, delinquent for non-payment of taxes, had been by the auditor de-·livered to the sheriffs, notice should be published that the real estate, or so much thereof as should be necessa-ry to pay the taxes and charges, should be sold, at a time. specified : that if the taxes and charges were not previ-·ously paid, the sheriff should make sale accordingly, ·that the sheriff, on receiving from the· purchaser the ·amount of purchase money, should grant to him a mem-·orandum of the sale, particularly setting forth the ma-·terial facts relating to the land, the tax and the sale, to ·which should be annexed a receipt for the purchase money : that the sheriff should make a list of the real estate ·sold, setting forth the material facts, annexed to which should be an oath subscribed and taken by the sheriff : that the list with the certificate of the oath attached, should be returned to the court of the county : and that if the court saw no cause to doubt the correctness of the list, it should order a copy to be certified to the auditor : that the owners, or others, might redeem the real estate ·within two years from the sale ; that the purchaser of a part ·of a tract of land, so sold, and not redeemed within the said ·two years, his heirs and assigns should have the quantity purchased, surveyed and laid off at his expense, by the sur-

16

veyor of the county ; or where there should be no coun-
ty surveyor, then by some person to be appointed by the
court of the county for that purpose ; the said survey to
commence on either of the lines of the tract, at the op-
tion of the purchaser his heirs or assigns, so as not to
include the improvements on the same (if it could be
avoided), and to be in one body, the length whereof shall
not be more than double the breadth, when that is prac-
ticable : that a plat and certificate of the survey shall
be returned to the court of the county ; and if the court
upon examination thereof found it to be correctly made,
in conformity with the section, it should order the same
to be recorded : that when an entire tract of land was
sold, and not redeemed, within that time, the purchaser
might have a report made by the surveyor of the county
to the court thereof, specifying the metes and bounds of
the land sold, and the names of the owners of the
adjoining tracts, and giving such further descrip-
tion as will identify the land ; and that the court,
unless it should see some objection to the report, should
order it to be recorded: that after the expiration of the
two years, the purchaser of land not redeemed might ob-
tain from the clerk of the court of the county a deed in
which should be set forth the circumstances appearing in
the clerk's office in relation to the sale : that if the sale be of
a part of a tract of land, the deed should refer particular-
ly to the plat and certificate of survey. returned accord-
ing to the 15th section, and the order of court thereupon ;
and if the sale be of an entire tract of land, it shall refer
to the report made according to the 16th section, and
the order thereupon : that when the purchaser has as-
signed the benefit of his purchaser, the deed might, with
his assent, evidenced by his joining therein or a writing an-
nexed thereto, be executed to his assignee ; that if the
purchaser shall have died, his heirs or assigns may move
the court of the county, or corporation (whose officer
made the sale) to order the clerk, or a presiding justice
to execute a deed to such heirs or assigns: that if no

such deed or order of court, should be made within one year after the expiration of the two years mentioned, the former owner might, after such year, and before a deed was made, redeem the land : that when the purchaser of any real estate so sold, his heirs or assigns shall have obtained a deed according to the 17th, 18th, 19th,. 20th, 21st and 22d sections, and within six month from the date of such deed shall have caused the same to be recorded in the court of the county, or corporation, in which such real estate shall lie, such estate shall stand vested in the grantee in such deed, as it was vested in the party assessed with the taxes (on whose account the sale was made), at the commencement of the year for which the said taxes were assessed, notwithstanding any irregularity in the proceedings under which such grantee claims title, *unless such irregularity appear on the face of the proceedings*. And if it be alleged that the taxes for which the sale was made were not in arrear, the party making such allegation must establish the truth thereof by proving that the taxes were paid.

The State, by law of long standing, had a lien for the taxes on land which she might, under such legislation as I have referred to, enforce by sale. These laws, and similar laws, have been authoritatively held to be constitutional. *Wild's Lessee, v. Serpell,* 10 Gratt. 405; *Flanagan v. Grimmett,* 10 Gratt., 421 ; *Levasser v. Washburn,* 11 Gratt., 572; and numerous other cases adjudicated by the Supreme Court of Appeals of Virginia and of this State : and the decisions in other States might be cited, but it is deemed unnecessary.

On the 4th day of Feb., 1862, the Legislature of the Restored Government of Virginia passed an act amending and re-enacting section 14 of said chapter 37 of the Code of Virginia. The change made in section 14 of said chapter 37 is not material to this case, and it is unnecessary further to notice it here.

By the Constitution of 1863, of this State, the county court which previously existed within her limits, under

the Constitution and laws of Virginia, was dispensed with and ceased to exist. But chapter 37 of the Code, as amended by the act of 1862, continued in force, except those parts of it which became practically inoperative by reason of the non-existence of county courts. In the absence of county courts and clerks of such courts, the purchasers of land sold by sheriffs for taxes in the year 1860, who had not obtained deeds prior to the the time Constitution of 1863 of this State took effect,were lett without remedy, or provision of law, by which they could obtain such deeds. In order to supply this subsisting deficiency in the law, the Legislature of this State, very properly and justly, on the 7th day of October, 1863, soon after the Constitution of the State took effect, passed an act entitled "An act providing how lands heretofore or hereafter sold and not redeemed, shall be surveyed and conveyed." In this act it is provided that "what is authorized to be paid under the 14th section of chapter 37 of the Code of Virginia (ed. of 1860), to the clerk of any court of any county, may be paid to the Recorder of the county. Any plat and certificate or report to be returned, or made to any county court under the 15th and 16th sections of said chapter, shall be returned or made to the circuit court of such county, or to the judge thereof in vacation. Any proceedings or order to be had or made, in or by the county court of any county, according the provisions of said chapter, shall be had or made by the circuit court of the county, or by the judge thereof in vacation. Any order made by virtue of this act by a judge in vacation, shall be returned by him to the clerk of the circuit court of the county wherein the sale was made, and shall be, by such clerk, forthwith entered of record in the law order book of said court. Any deed to be made under said chapter by the clerk, or deputy clerk, of the county court, shall be made by the Recorder of the county, unless he is interested ; and then it shall be made by the clerk of the circuit court of the county ; in which deed shall be set forth all the circumstances

appearing in the circuit court clerk's office, or in the Recorder's office, in relation to the sale, and it shall conform in all other respects to the requirements of said chapter. Deeds required by said chapter to be recorded in the court of any county, shall be recorded in the office of the Recorder of the county."

On the second day of March, 1865, the Legislature passed an act entitled "An act to provide for the sale of certain lands for the benefit of the School Fund." There is but one section of this act which has any reference or application, whatever, to the subject under consideration, and that is the eleventh section thereof, which provides, that "Any person who may have purchased any real estate at a sale thereof made in the year 1860, for the taxes due thereon, and who has failed to obtain a deed therefor, either by reason of the loss of the receipt of the sheriff for the purchase money, or by the failure of the sheriff to give such receipt, may file his petition in the circuit court of the county in which such real estate, or any part thereof may be, setting forth the person in whose name such real estate was sold and the amount due thereon at the filing of such petition; and the reason why he had not obtained such deed. If the court shall be satisfied of the truth of the facts stated in said petition, it shall order a deed to be made to such purchaser, for said real estate, in the manner prescribed in chapter thirty-seven of the Code of Virginia, upon the payment to the sheriff of all taxes due thereon." This section does not apply to the case under consideration because the sheriff did give the purchaser a proper receipt for the purchase money, and the receipt is in existence, and is not pretended or claimed, to have been lost at the time the proceedings hereinafter referred to were had before the circuit court of Kanawha county, with a view to obtain the deed from the Recorder, filed with the answer and on which the deed seems to have been predicated. At the time of the passage of the last named act the Legislature considered

that the purchaser in either of the cases specified in the eleventh section thereof had not been, and was not, provided for by law.

It must be admitted that under the provisions of the thirty-seventh chapter of the Code of Virginia, and of the said act of 1863, the Legislature had attempted to make, and had made, ample provision whereby purchasers of land sold for taxes at sheriff's sales in 1860, which had not been redeemed, could obtain proper deeds vesting them with such title as is mentioned in said thirty-seventh chapter. But on the twenty-seventh day of February, 1866, the Legislature passed chapter ninety of the acts of 1866, entitled, "An act to provide for the sale of real estate returned delinquent for the non-payment of taxes." See Acts of 1866, page 85. The thirty-second section of this act reads thus: "Chapter thirty-seven of the Code of Virginia, second edition, and chapter fifty-four of the acts of the General Assembly of Virginia, passed February 4, 1862, are hereby repealed." This act in no way refers to the said act of 1863, or to the eleventh section of said act of 1865, or any part of that act. By the act of 1866 said chapter thirty-seven and the act of 1862, amending the fourteenth section of that chapter were swept out of existence as laws, *for every purpose*, the appellees contend. The act of 1866 in no way refers expressly to or mentions lands sold for the non-payment of taxes prior to its passage, except for the year 1865, and all that is contained therein in reference to the sales made in that year is contained in the last section, which is section thirty-three, and which reads thus: "Lands sold in the year 1865, for the non-payment of taxes shall be redeemed according to the provisions of this act, and if not so redeemed, conveyances shall be made to the purshaser thereof according to the provisions of this act." There had been no sales of lands for the non-payment of taxes between 1860 and 1865, and could not have been under any law. The sales of lands for the non-payment of taxes in the year

1865 were made under and by virtue of the provisions of said chapter thirty-seven of the Code of Virginia, and the amendments thereto made, by the said acts of 1862 and 1863. There was no other law in force by which the sales could have been made. The act of 1866, and its title, with the exception of section thirty-three, above quoted, upon its face, seems to provide for sales to be made in the future, though most of its material provisions are substantially the same as those in said chapter thirty-seven, and sections fourteen, fifteen and sixteen of the act are substantially the same as sections fifteen, sixteen and seventeen of chapter thirty-seven; except the plat and certificate of the survey and the report are to be returned to the Recorder, instead of the county court, and the Recorder is authorized to make the deed instead of the clerk of the county court. The first section of the ninth article of the Constitution of this State, provides, that, "all private rights and interests in lands in this State, derived from or under the laws of the State of Virginia, prior to the time this Constitution goes into operation, shall remain valid and secure, and shall be determined by the laws heretofore in force in the State of Virginia."

In this state and condition of the legislation and the law, the defendant Kelly, who became the purchaser at the sheriff's sale in Kanawha county, of the 110 acres of the tract of land in the bill mentioned, which was, and is, a part of a larger tract returned delinquent for the non-payment of the taxes due thereon to the State of Virginia, for the year 1859, in the name of A. F. and Wm. Donnally and Forqueran's heirs, and who by endorsement on the receipt of the sheriff, given for the purchase money, assigned one-half of the same to the defendant Wyatt. The assignment has no date to it, but it appears that after it was made, John L. Cole, surveyor of Kanawha county, at the request of defendants Kelly and Wyatt, made a report, accompanied by a plat, to the circuit court of Kanawha county, specifying the

metes and bounds of the land sold and the names of the
of the owners of the adjoining tracts, and thereupon
the court made an order reciting, substantially, that
on the 3rd of April, 1866, John L. Cole, surveyor
of Kanawha county, made report to the court, accompa-
nied by a plat of a tract of land containing 110 acres,
lying on Field's creek in said county, being part of 200
acres delinquent for taxes thereon, due the State of
Virginia for the year 1859, in the names of A. F. and
Wm. Donnally and Forqueran's heirs, and offered for
sale by E. S. Arnold, sheriff of the aforesaid county, on
the 17th day of September, 1860, at which sale defend-
ant J. M. Kelly became the purchaser of the 110 acres,
part of the 200 acres aforesaid, for the sum of $2.05—
the amount of the taxes due on said 200 acre tract, and
the said Kelly having assigned one half of the 110
acres to Matthew P. Wyatt, all of which appears by the
receipt of the said sheriff, filed with the plat and report;
and it appearing that the said plat and report are
correctly made and are in conformity with the require-
ments of law; it is therefore ordered that the said
plat and report be recorded and that the Recorder
of this (Kanawha) county do execute a deed for the said
tract of land to the said J. M. Kelly and Matthew P. Wya-
att, jointly, as provided by law. No survey of the quan-
tity purchased was made by the surveyor; and no certifi-
cate of survey was returned with the plat to the circuit
court or to the Recorder. Afterwards the Recorder of
Kanawha county made a deed to Wyatt and Kelly for the
one hundred and ten acres of land described in
the order of the circuit court. This deed is dated
the fourth of April, 1866, was acknowledged by
John Slack, who signed the same as Recorder, before a
justice, on the 12th day of April, 1867, and admitted to
record in the Recorder's office of Kanawha county on
the same day. The deed recites the quantity of the
land sold to be one hundred and ten acres, part of two
hundred acres of land returned delinquent for taxes "in

the year 1859," in the name of A. F. and Wm. Don-
nally and Forqueran's heirs, and described as lying on
Fields' Creek—that the amount of taxes due thereon
was $1.68, and the amount paid by Kelly to the Sheriff,
as purchase money, for the one hundred and ten acres
was $2.05, which appears by receipt of the Sheriff, E. S.
Arnold, herewith intended to be recorded and, also, by
the list of sales of such real estate returned by said
Sheriff, and then on file in the office of the Recorder,
which receipt is endorsed as follows: "I assign one half
of the within to M. P. Wyatt.—J. M. Kelly." It then
refers to the said order of the circuit court, and states cor-
rectly the order of the court, except that it does not state
or show on its face the year for which the land was returned
delinquent, but that it was returned delinquent in the year
1859. The deed also gives the boundaries of the land,
in accordance with the report of surveyor Cole, as the
report appears in the record. It no where appears in
the record that the plat and report, or either of them, or
the receipt of the sheriff for the purchase money, were
ever recorded in the Recorder's office, or elsewhere. Af-
ter these proceedings the Code of this State of 1868
was enacted, which took effect on the 1st of April,
1869, just fifteen days prior to the date of the decree in
this cause. The 15th section, of chapter 31, of this
Code, provides that the land sold may be redeemed
within one year of the sale thereof. The 17th and 18th
sections are substantially the same as the 14th and 15th
sections of the act of 1866. The 23d section provides
that if the purchaser shall have died, the Recorder may
make the deed to his heirs, or assigns. The 24th sec-
tion provides that if no such deed be made, within one
year after the right to redeem the estate shall expire,
the former owner, his heirs or assigns may, after such
year, and before the deed or order, mentioned in the
22d section is made, redeem the land. But no such
deed shall be made or obtained, after five years from the
17

date of the sale; except that where the sale was made before the passage of the Code the deed therefor may be made within two years after the date of such passage. The 19th section is substantially the same as the 16th section of said act of 1866, and it is substantially the same as section 17, of said chapter 37, except that the Recorder is directed to make the deed, instead of the clerk of the county court. The 40th section of said chapter 31, of the Code of 1868, provides that, "Lands sold in the year 1860, and in any year subsequent thereto, and before the year 1869, for the non-payment of the taxes thereon, shall be redeemed according to the provisions of this chapter, and if not so redeemed, conveyances shall be made to the purchasers thereof, their heirs or assigns, in the same manner, and with like effect as if this chapter had been in force when the sale was made, and the proceedings had been according to its provisions. All deeds for real estate sold in the year 1860 for the non-payment of taxes thereon, made since the 27th day of February, 1866, are hereby legalized and made valid, and shall have the same force and effect, in all respects, as a sale, deed and other proceedings hereafter made and had, according to the provisions of this chapter, except that the former owner of such real estate, his heirs or assigns may, within one year after the passage of this act, redeem the same, in all respects, as if no such deed had been made. And it shall be the duty of the person having the legal title to such real estate, derived through any such deed, to re-convey the same to such former owner, his heirs or assigns, upon the payment or tender, to him, of the sum required to redeem the same, and the costs attending such conveyance, within the said one year, and upon his failure or refusal to do so, the circuit court of the county shall order such deed to be made by the Recorder, or a commissioner appointed for that purpose, by such court, at the cost of the party so refusing. No person shall in any suit, not brought for the purpose, within one year after the pas-

sage of this act, or otherwise, after the expiration of that time, question the validity of such sale or deed, or of any sale or deed, heretofore made, or avoid or impair, the effect thereof to pass the complete title to the real estate sold, for any cause that would not be sufficient and proper to avoid a sale or deed, hereafter made, under the provisions of this chapter. Nor shall any person be permitted to prove the payment of taxes, or on account of such payment question the validity of such sale or deed, except within five years from the passage of this act, as provided in section 27, of this chapter. Provided that real estate sold in the year 1867, for the non-payment of taxes thereon may be redeemed at any time within two years from the day of sale."

Having stated the provision of the Constitution of 1863, and all the facts and legislative enactments bearing upon the questions presented for determination in this cause, so far as they are now known to me, I will proceed to consider those questions which I deem it proper to decide.

The questions will be considered as follows:

*First.* Did Kelly acquire any right or interest in and to the 110 acres of land, part of the land in the bill mentioned, by his purchase at the sale made by the sheriff of Kanawha county, on the 17th day of September, 1860, under, and by virtue of, the laws of the State of Virginia, in force at the time of the sale, and if so, what was, and is, the nature and character of that right or interest?

*Second.* Was that right secured by the first section of the 9th article of the Constitution of this State, taking effect in 1863?

*Third.* Was the deed, dated the 4th day of April, 1866, from the Recorder of Kanawha county to Wyatt and Kelly void and of no effect when executed, and prior to the first day of April, 1869, when the 31st chapter of the Code of this State took effect, because at the date of the deed there was no law in force authorizing

such deed to be made upon proper survey and plat and certificate thereof and assignment to Wyatt having first been made and returned?

*Fourth.* Whether under and by the provisions of section 40, of the 31st chapter of the Code of this State, aforesaid, the deed was made valid and effective so as to pass the title of the owners in whose names it was re- turned delinquent and sold?

*Fifth.* Whether, under all the circumstances appearing, it was error in the court below, by its decree rendered on the 16th day of April, 1869, to decree partition of the land in the bill mentioned, and deny to Wyatt and Kelly, or either of them, any right therein?

Among the greatest of civil evils from which the people of what is now the State of West Virginia have suffered has been the confusion of land titles hereinbefore referred to, and the judiciary should certainly give reasonable, just and firm support in its judgments and decrees to proper efforts of the Legislature to mitigate and remove the calamity, and to avoid its further increase or aggravation. The State governments of the Union derive their support chiefly from direct taxation upon property; and it is difficult to see how their existence can be continued without the collection of the taxes imposed by law or levied by proper authority in pursuance of law. It has always been deemed just and expedient in Virginia, West Virginia, and, I believe, all the other States of the Union, to charge and collect, by law, taxes upon and from lands. To realize the taxes imposed or charged by law, it was found to be indispensible to declare the taxes charged upon land a lien thereon for the payment thereof, and in case of a failure to pay the taxes, to provide, by law, for the collection or realization thereof by sale of the land, or sufficient thereof, for the purpose, and ultimately to pass the title of the owner in default, to the purchaser, by deed, unless the land sold was redeemed according to law.

1874.
January Term.

Forqueran
v.
Donnally.

It cannot be maintained that the purchaser by the pur-chase, payment of the purchase money, and delivery to him of the sheriff's receipt for the purchase money in due form, became invested with the legal title which was vested in the owner in whose name it was returned de-linquent. What right or interest then did the purchaser acquire in the land sold to him? The answer is appa-rent and clear. He immediately acquired the right, if the land was not redeemed in the manner prescribed by the 13th section of chapter 37, of the said Code of Virginia within two years from the sale, to obtain a deed in the mode and manner prescribed by the 15th and 17th sections of said chapter 37, without privilege to the former owner to redeem, until after the expiration of one year from the expiration of the two years without the deed having been made to the purchaser, in which case, after the expiration of the year, without the deed having been made, he had the right to obtain the deed at any time before the land was redeemed; and the deed when properly obtained and properly made and recorded within the proper county, within six months from its date, vested him, under the 23d section of chapter 37, aforesaid, with the estate in the land sold as it was vested in the parties assessed with the taxes (on account whereof the sale was made) at the commencement of the year for which the said taxes were assessed, notwith-standing any irregularity in the proceedings under which he (the grantee) claims title, unless such irregu-larity appear on the face of the proceedings. This right grew directly out of the contract of sale and purchase made in pursuance of law.

The contract was a civil contract to all intents and purposes, and this right, I think, may properly be des-ignated as an equitable right or interest in the land sold, entitled, on the failure to redeem, to ripen into a full legal title, as before stated. In the case of *Morri-son v. Campbell*, 2 Rand., 206, it was *held* that "An in-choate right to land, held by entry and survey only, is

real estate, and will descend to the heirs and not to the executors." The 21st section of said chapter 37 treats the right or interest of the purchaser as real estate; as it provides that if the purchaser shall have died, the deed shall be made to his heirs or assigns. This right or interest of the purchaser in the land is given by the law expressly such attributes of property that it may pass by written assignment, or by descent. This disposes of the first question.

The two years from the day of sale expired on the 17th of September, 1862. The third year from the day of sale had not expired when the Constitution of this State, of 1863, went into operation by about one-third. The land was not redeemed within the two years, and at the time said Constitution went into operation the purchaser was entitled to proceed at once and have a deed, without any existing right or privilege of redemption in the former owner, or any other person. It is therefore clear that at the adoption of the Constitution of this State, of 1863, Kelly had an equitable right or interest in and to the one hundred and ten acres of the land, sold to him as aforesaid, being part of the land in the bill mentioned, and that, by virtue of such equitable right or interest, Kelly had the right to proceed for and obtain, a deed for the same, in the mode and manner prescribed by said fifteenth and seventeenth sections of said chapter thirty-seven; and that such equitable right and interest was derived under the laws of Virginia prior to the time the Constitution of this State, of 1863, went into operation; and that such equitable right or interest is within the meaning and purview of the first section of article nine of said Constitution and was thereby secured.

I now proceed to consider the third question. A State cannot avoid selling lands, in some manner, for the non-payment of taxes lawfully charged thereon. When such sales are made, substantially in conformity to law, the purchaser should be reasonably secured and protected in his purchase. Public policy obviously re-

quires this, and the true interest of the former owner demands it; for if it is held and generally known that such sales are valid and binding it is not easy to see why lands sold at such sales should command a less price than if sold at public sale for any debt under decree of a court of equity. But if such sales are treated as mere matters of form, and to be avoided at the option of the owners for whose default the sales became necessary, or for slight and immaterial or unsubstantial reasons, it cannot be reasonably expected that the lands sold will command more than a mere nominal price. In such cases a whole tract of a thousand acres would not command more than sufficient to satisfy the small amount of tax due, when otherwise one acre thereof, or perhaps less, would be amply sufficient for the purpose, and the entire residue be saved to the owner. See upon this subject the opinion of judge Allen in the case of *Flanagan v. Grimmet.* In making the sale the sheriff must be deemed to have acted as the agent of the State and of the owners, and the substantial parts of sections fifteen, sixteen, seventeen, twenty-two and twenty-three of said chapter thirty-seven, except so far as they apply to the specific remedy, it seems to me, must be considered as constituting material and substantial parts of the contract of sale and purchase ; and that the contract being a civil contract it should receive such reasonable construction and be given such force, as to the material and substantial parts thereof, as are ordinarily given to the other lawful contracts of a civil nature. If this is done then tax sales, in so far as they amount to civil contracts, are as much protected in their obligation against being impaired by State legislation by the Constitution of the United States and of this State, as other civil contracts. The repeal of the said thirty-seventh section of the Code of Virginia, and the act of 1862 cannot be construed, consistently with the Constitution of the United States and of this State, as having destroyed the contract and its obligation, or the equitable right or in-

terest of the purchaser in the land by virtue of the contract. But it is maintained in argument that although the repeal of said chapter thirty-seven and the act of 1862 by the act of 1866 may not have destroyed or impaired the obligation of the contract, or extinguished the equitable right or interest of the purchaser in the land, that it took away the remedy or means theretofore provided by law, and then in existence, by which the purchaser could obtain a deed or invest himself with the legal title to such estate in the lands as he contracted for; that althongh the act of 1866 does not expressly repeal the said act of 1863, still it does so by implication, and that the act of 1866 does not provide a remedy for the purchaser; that if the act of 1863 cannot be held as being repealed, expressly or by implication, yet the repeal of said chapter thirty-seven and the act of 1862 rendered the act of 1863 inoperative, practically, and the purchaser was thereby left without remedy.

It seems to me from the provisions ot the acts of 1866 that the Legislature simply meant by the repealing clause that that act would take the place of the said thirty-seventh chapter of the Code, and of the act of 1862, as a general law governing future sales for taxes, and providing how deeds should or might be obtained by purchasers at the tax sales of 1865; that in fact the Legislature did not intend to repeal the act of 1863, or render it practically inoperative as to sales made in 1860. If they did so intend, why did they not say so in the act of 1866? Why expressly name the act of 1862 in the repealing clause, and not the act of 1865, or the eleventh section of the act of 1868? The act of 1863 was of much more importance and ot more prominence than the act of 1862, as may readily be seen by a comparison of the two; that while the Legislature did not intend that the said thirty-seventh section of the Code, and the act of 1862 should remain or continue longer in force as general laws, still the Legislature did not intend by the repeal to destroy or impair the obli-

gation of the contracts of sale made for taxes in 1860, or to destroy the equitable rights or interests of the purchasers at such sales, or to leave such purchasers without any remedy by which they could obtain the title thereto which was certainly their just and constitutional right; that it was in the legislative mind that parts of the said thirty-seventh chapter of the Code were material and substantial parts of the contracts of sale made thereunder, and that, although by virtue of the repealing clause, the chapter was repealed as a general law in the future as applicable to future sales, and the mode of obtaining deeds for lands sold in 1865 : that still so far as any section or sections of the chapter constituted a substantial part of the contract of sale of land made in 1860, that they must be considered as remaining in force as part of the contracts in these cases ; and that such construction being proper and in accordance with the Constitution of of the United States, and of this State, the act of 1863, would continue to provide a remedy for such purchasers as ample, as before the passage of the act of 1866. It is not the province of the courts to so construe an act of the Legislature as to make it so operate as to deprive those who have just legal or equitable rights of all remedy for their enforcement or for redress, if any other reasonable construction can be placed upon it.

It has often been held, and as I conceive with justice and wisdom, that a law which deprives a party of all legal remedy, must necessarily be void.

Several statements, *in pari materia,* and relating to the same subject, are to be taken together and compared, in the construction of them, because they are considered as having one object in view, and as acting on one system. And the rule applies, though some of the statutes may have expired, or are not referred to in the other acts. The object of the rule is to ascertain, and carry into effect the intention of the Legislature ; and it is to be inferred that a code of statutes relating to one subject was

governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. 1 Kent Com. 463. Statutes are not considered to be repealed by implication, unless the repugnancy between the new provisions and a former statute be plain and unavoidable. *Id.*, 466, note C and cases cited. A construction which repeals former statutes or laws by implication, and divests long approved remedies, is not to be favored in any case. *Id.* citing Cowen Judge, 3 Hill (N.Y.) 472. Virtual repeals of statutes are not favored by the courts. *Taylor v. Shields' Heirs* 5 Litt. (Ky.) 295. See also 1 Kent. Com. 455. *Dash v. Van Kleeck* 7 Johns. (N. Y.) 477. *Whitman v. Hapgood* 10 Mass. 437; *Hassler's Lessees v. King* 9 Gratt. 123 and 124:

Under the provisions of the fifteenth section of said chapter thirty-seven taken in connection with the act of 1863, the purchaser had nothing to do but to have the quantity purchased laid off at his expense, by the surveyor of the county, the survey to commence on either of the lines of the tract at the option of the purchaser, so as to include the improvements on the same (if it could be) and in one body, the length whereof not more than double the breadth, where practicable, and have a plat and certificate of the survey returned to the circuit court of the county or judge thereof in vacation and ask the court or judge to order it to be recorded, and if they were correct (I mean the plat and certificate) the court or judge was bound to make the order, and then it became the duty of the Recorder of the county to make to the purchaser a proper deed, on request. The duty to be performed by the circuit court or judge, in such case, is simply ministerial, and not judicial. The court or judge has no authority to inquire into the regularity or validity of the sale made by the sheriff. *Randolph Justices v. Stalnaker* 13 Gratt. 523; *Delany v. Goddin* 12 Gratt. 266.

The making of the survey of the land, purchased in the manner substantially specified in the fifteenth section

of said chapter thirty-seven, by the purchaser, it seems to me is a material part of the contract to be performed by him, *before* the deed can be lawfully and properly made for the land purchased, though it may be called part of the proceedings to be had upon the deed. It is also material that the deed shall refer to the plat and certificate of survey. See *Randolph Justices v. Stalnaker* before cited. It cannot be maintained that the deeds, properly made, according to said thirty-seventh chapter of the Code and of the act of 1860 and the act of 1863, to purchasers of lands sold at the tax sales of 1860, prior to, and even the day before, the passage of the act of 1866, or the rights of the grantees, are, or can be, affected, in the least, by the repeal of the laws under which the sales or deeds were made.

"The *obligation of a contract*," it is said "consists in its binding force on the party who makes it. This depends upon the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them, as the measure of the obligation to perform them, by one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect or diminish the duty, or impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other; hence any law which, in its operations, amounts to a denial or obstruction of the rights, accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution. It is the civil obligation of contracts which the Constitution is designed to reach; that is the obligation which is recognized by, and results from, the law

of the State in which it is made." Cooley's Con. Lim. 285 and 286 and cases there cited. When a contract is neither illegal or void its obligatory force is coextensive with its stipulations. *Id.* 206. Story on the Con. sec. 1380. "Such being the obligation of a contract, it is obvious that the rights of the parties in respect to it are liable to be affected, in many ways, by changes in the laws, which it could not have been the intention of the constitutional provision to preclude." "But the changes in the laws are not regarded as necessarily affecting the obligation of contracts. Whatever belongs merely to the remedy may be altered according to the will of the State, *provided* the alteration does not impair the obligation of the contract ; and it does not impair it, *provided* it leaves the parties a substantial remedy, according to the course of justice, as it existed at the time the contract was made. It has accordingly been held that laws changing remedies for the enforcement of contracts will be valid, notwithstanding the new remedy is less convenient than the old or less prompt and speedy. Cooley's Con. Lim. 286 and 287, and cases there cited. "The State is bound to afford adequate process for the enforcement of rights; but it has not tied its own hands as to the modes by which it will administer justice. These, from necessity, belong to the supreme power to prescribe ; and their continuance is not the subject of contract between private parties." *Id*, 289. "But a law which deprives a party of all legal remedy must necessarily be void. If the Legislature of the State were to undertake to make a law preventing the legal remedy upon a contract fully made, and binding on the party to it, there is no question that such Legislature would exceed its legitimate powers. Such an act must necessarily impair the obligation of the contract within the meaning of the Constitution. And a law which takes from certain classes of persons the right to maintain suits, because of having participated in rebellion against the government, is void, on the same ground. And where

1874.
January Term.

Forqueran
v.
Donnally.

a statute does not leave a party a substantial remedy, according to the course of justice, as it existed at the time the contract was made, but shows upon its face an intention to clog, hamper or embarrass the proceedings to enforce the remedy, so as to destroy it entirely, and thus impair the contract so far as it is in the power of the Legislature to do it, such statute cannot be regarded as a regulation of the remedy, and is void." *Id*, 289, 290; and authorities there cited. "So a law which extends the time for redemption of lands sold on execution, or for delinquent taxes, after the sales have been made, is void; for in such a case the contract with the purchaser, and for which he has paid his money, is that he shall have title at the time then provided by law; and to extend the time for redemption is to alter the substance of the contract, as much as would be the extension of the time for the payment of a promissory note. And where by statute a purchaser of lands from the State had the right, upon the forfeiture of his contract of purchase, for the non-payment of the sum due upon the contract, with a penalty of five per cent., *it was held* that this right could not be taken away by a subsequent change in the law which subjected the forfeited lands to private entry and sale. *And it has been held* that a statute repealing a former statute, which made the stockholders in a corporation liable for its debts, was in respect to creditors existing at the time of the repeal, a law impairing the obligation of contracts. In each of these cases it is evident that substantial rights were affected; and when the laws which were held void operated upon the remedy, they either had an effect equivalent to importing some new stipulation into the contract, or they failed to leave the party a substantial remedy such as was assured to him by the law in force when the contract was made. *Id.* 291, 292, 293, and cases there cited.

After much reflection, as well as examination, it is the conviction of my mind, that the act of 1866 did not re-

peal, expressly or impliedly, the act of 1863, or render it practically inoperative as to purchasers of land at the tax sales of 1860. But suppose that such was the plain and clear effect of the act of 1866. Can or should it be held that the purchasers at these sales who were, at the passage of the act of 1866, and before, justly and lawfully entitled to obtain deeds for the lands purchased, were thereby left, or intended to be left, by the Legislature, without remedy?

Courts will not readily intend, where the Legislature enacts a general law upon a given subject and repeals an existing, general law, of like character upon the same subject, that it was the intention of the Legislature, by the repeal, to deprive parties who acquired just rights or interests under the old law, of all remedy, or to extinguish their rights or interests, unless such intention is manifest. But courts may properly, in such cases, rather than the parties should be left without remedy, intend that the proceedings or remedy provided by the new law, as far as practicable, was intended by the Legislature to be applied to rights and interests acquired under the old law. *Wright v. Oakley*, 5 Metc. (Mass.) 406; *Steamship Co. v. Jolliffe*, 2 Wall. (Sup. Ct. U. S.) 458; *Hassler's Lessee v. King*, 9 Gratt. 115.

The eighteenth section, of chapter sixteen, of the Code of Virginia, to which I have already referred, provides, in substance, that no new law shall be construed to repeal a former law, as to any right accrued, or claim arising, under the former laws or in any way to affect any such right accrued or claim arising before the new law takes effect; save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings.

This section was in full force and effect at the passage of the act of 1866, and it certainly was neither expressly or impliedly repealed by that act, and clearly was not intended to be. It must be presumed that the Legislature knew of this section, and

contemplated its effect and operation. With this section continuing in force, would it not have been practicable and proper for the purchaser to have proceeded and obtained a proper deed under sections fourteen and sixteen, of the act of 1866? Said sections fourteen and sixteen are exact copies of sections fifteen and seventeen of chapter thirty-seven of the Code of Virginia, except as to the tribunal and officer who are to act upon the plat and certificate of survey and make the deed. The right existing, and being secured, if there be no other remedy, what reasonable or just objection, I again ask, could there have been to the purchaser, or his heirs, or assigns, (where the assignment has been properly made) proceeding to obtain, and obtaining, the deed under sections fourteen and sixteen of the act of 1866, conforming the proceedings to the provisions of these sections? I confess that I am at present unable to see any just or well founded objection to such a proceeding, and think it would, under the circumstances, have been proper and competent. For the foregoing reasons, according to my present judgment and conviction, the deed to Wyatt and Kelly was, and is, not void and of no effect, when executed, or on the day of its date and prior to the first day of April, 1869, when chapter thirty-one of the Code of this State took effect; because at the date of the deed there was no law in force authorizing it upon proper survey and plat and certificate and assignment to Wyatt; and I am of opinion that it would have been competent for the purchaser (Kelly) to have procured such survey and plat and certificate of survey to be made at, and prior to, the execution of the deed, and also for him to have made the assignment to Wyatt. But while this is true, I am clearly of opinion that the deed was, and is not, good or sufficient to pass title, because there was no such survey and plat and certificate of survey made and returned prior to the execution of the deed, and because no reference is made to such plat and certificate of survey in the deed as having been

made. *Randolph Justices v. Stalnaker*, 526, opinion of Allen, Judge. The deed is probably subject, upon its face, to other just criticisms and objections, but I deem it unnecessary now to consider them. The court had no duty or authority imposed or conferred upon it, except to pursue the statute. It had no authority to order the deed to be made to any person, and the making of such order by the court could not give validity and force to the deed if otherwise insufficient. In the case of *Charles Shutte v. Uriah Thompson*, 15 Wall., 151, recently decided by the Supreme Court of the United States, it seems that the validity of a deed made after the passage of the Act of 1866, to a purchaser at a tax sale in the county of Doddridge, in the year 1860, was passed upon by that Court. And the Court, in its opinion, uses this language, viz: "The next error of which complaint is made is, that the court refused to permit the defendant to give in evidence a tax deed for the lands from Talliaferro Knight, Recorder of Doddridge county, to John S. Hoffman. It seems to have been offered to show title out of the plaintiff. The deed bears date the 26th of March, 1866. From the recitals contained in it, we are informed that the land was returned delinquent for the non-payment of taxes for the year, 1857, and that it was sold in the year 1860, to John S. Hoffman. The sale was made under the laws of Virginia, of which West Virginia was then a part. (Chapter thirty-seven, Civil Code). By that statute, two years were allowed for redemption, and after they had expired the purchaser was required to have a survey made and reported to the court of the proper county, which, if approved, the court might order to be recorded. After all this had been done the clerk was required to make a deed to the purchaser in conformity to the survey. No sale could be consummated, and no deed could be made prior to the return, confirmation and record of such survey. It is important to keep these provisions of the law in mind; for in 1863, West Virginia became a

separate State. By virtue of a clause in its Constitution, as well as without such ordinance, the laws of Virginia continued in force until changed by the West Virginia Legislature. But that Legislature, on the 27th of February, 1866, passed an act by which the entire thirty-seventh chapter of the Virginia Code was repealed, so far as it applied to tax sales of land in West Virginia. Acts of the Legislature, 1866, p. 85. At that time the deed to Hoffman had not been made, nor had the survey of the land been made and reported. This appears from the deed itself. It is plain, therefore, that there was no authority for the survey and report, or for the deed. Without the statute in existence when they were made, they could have no efficacy. As transmissions of title they were wholly void. The deed was, therefore, properly rejected." This is all that is said upon the question in that opinion. It would seem that the court entirely overlooked the statute of 1863, the first section of the ninth article of the Constitution of this State, and the question as to whether the purchase was a civil contract, and whether the purchaser, by the purchase, became vested with an equitable right or interest in the land purchased, and whether such right or interest by the first section of article nine of the State Constitution secured that equitable right or interest to the purchaser. The court also seems to have considered, from the language employed, that the court might or might not confirm the plat and certificate of survey; that the act was a judicial act. According to the decisions of the Court of Appeals of Virginia, made prior to the formation of the State of West Virginia, and before the war, the duty of the court was merely ministerial, and not judicial. In the case of *Randolph Justices v. Stalnaker*, 13 Gratt., 523, the court unanimously *held* "that it is the duty of a county court, acting under the Code, chapter thirty-seven section fifteen, page two hundred and ninety-three, in relation to land sold for taxes, to admit the report of the

surveyor, and to record it if it conforms to the act.    And the court has no authority to inquire into the regularity or validity of the sale made by the sheriff." And also that the circuit court may proceed by *mandamus* to compel the county court to admit the report of the surveyor to record." See also *Delany v. Goddin*, 12 Gratt 266. The Supreme Court of the United States does not refer to or seem to have considered the fortieth section of chapter thirty-one of the Code of West Virginia hereinbefore cited, as to what effect it gives to such tax deeds—whether it makes them valid or not. In a word, that court does not seem to have considered scarcely any of the questions I have discussed, touching the effect of the passage of the act of 1866, and the repealing clause thereof. Whether it was because the questions were not brought to its attention, or for some other reason, I am left to conjecture. But I have great respect for the decisions of the Supreme Court of the United States upon all questions brought before it; and if I could see or feel satisfied that that Court had fully considered the questions I have discussed, and decided them adverse to my views, as herein expressed, I should feel strongly inclined, if my conscience would permit me, to follow and adopt its decision. It would be strange indeed, if, under the circumstances, the repealing clause of the act of 1866 could properly be construed to deprive the purchaser of the right or authority to have the survey made according to the contract, when that right was a part of the contract, and when the purchaser was not in default. The purchaser had not been required by any law to have the survey made, returned and recorded, or the deed made within any fixed period, and the act containing the repealing clause gave him no time whatever in which to do so, and the repealing act took effect from its passage. I repeat that it cannot be maintained that the purchaser was in default, or had done or failed to do any act by which his right or interest had been forfeited. If such construction is legitimate and proper,

then the purchaser at a tax sale who pays his money in good faith is left without adequate security or protection. It would be equivalent to deciding that while the Legislature cannot pass a law impairing the obligation of a civil contract, still it is competent for the Legislature to at once directly destroy the contract, purposely or by accident or mistake, by depriving a party of the power or authority of performing it. This would certainly be most startling, looking alone to the Constitution of the United States; and still more so, in the face of the first section of the ninth article of the Constitution of this State, of 1863, and other provisions thereof. The general policy of the Legislature of Virginia and of this State, since its formation, from 1809 to 1871, inclusive, as indicated by the legislation, has been to inspire in the public mind faith in the efficacy, validity and binding effect of. sales made of lands for taxes. That policy was adopted with the purpose of inducing and compelling the owners of land within the State to pay the taxes charged thereon, and in case of failure to pay, to prevent a sale of the land at an undue or ruinous sacrifice to the owners and to settle titles to lands. 2 R. C., 1819, App. 4, ch. 17, sec. 8, p. 532; ch. 24, sec. 38, p. 551; Acts 1831–2, ch. 72, sec. 22, p. 65; Acts 1866, ch. 90, sec. 21, p. 89; Code of West Va., 1868, ch. 31, secs. 25, 26, 27, 29, 40, 41; Acts 1871, ch. 194, p. 247. See also the very able opinion of the court delivered by Allen, judge, in the case of *Flanagan v. Grimmett*, 10 Gratt. 421, and also the cases before cited in 12 and 13 Gratt. It seems to me that to established the construction which may be drawn from the decision of the Supreme Court of the United States and contended for by the appellees here, to which I have referred, would at once and forever defeat the general policy of the legislation to which I have alluded.

It is true the purchaser here paid but a small sum of money, as the price, but he purchased, according to the

allegations of the bill, less than one-third of the land. and the principles involved in the case are the same as. if the purchaser had paid thousands of dollars.

It is proper that I should say that the only question presented to the Supreme Court of the United States for decision in the case of *Thompson and Shutte* was whether the legal title passed by the tax deed, but the decision of that question involved some other questions, though not all I have considered.

Does the second clause of the fortieth section of chapter thirty-one of the Code of the State make the deed to Wyatt and Kelly valid, notwithstanding its invalidity at the time the Code took effect? The fourth clause of the section must be read in connection with the second, and reading these clauses together, I think it is clear that it was not intended by the Legislature that a tax deed of the character of the one under consideration should not be declared invalid and insufficient to transmit title by the court in a proper case for the substantial deficiency which I have ascertained, especially if such action be taken by the court within twelve months after the passage of the Code. The court in this case declared the deed invalid, within twelve months after the passage of the Code, and the case was pending before and after the adoption of Code. The legislature is not inhibited by either of the Constitutions of this State from passing "retrospective" laws, and it was, and is, competent for the Legislature to pass such laws in many cases, if they are not *ex post-facto*, and do not impair the obligation of contracts. The power and authority of the Legislature. to pass "retrospective" laws of a healing or curative character, subject to the restrictions aforesaid, is very considerable. See this subject quite fully discussed and authorities cited, in Cooley's Con. Lim., 371, 372, 373, 374, 375, 376, 377, 378, 379. There may be some question whether the fortieth section, in and of itself, could be construed to validate the deed in this case at any time; but as the question does not arise I will not now

determine it. I do not think the deed was made good and valid by the said fortieth section.

But while I do not think the deed was valid to pass title, still the equitable title or interest in the land, subject to the right of redemption, had not been extinguished, but was in existence at the adoption of the Code of 1868, and when it took effect; and it was competent for the Legislature, even though the act of 1866 could properly be construed as leaving Kelly and Wyatt without remedy, to provide a remedy by which they could obtain a good deed for the one hundred and ten acres. Cooley's Con. Lim., pages last cited. And the thirty-first chapter of the Code of 1868 does provide a remedy in the fortieth and other sections thereof: but the last clause of the twenty-fourth section of that chapter provides, in effect, that no deed shall be made where the sale occurred more than five years prior to the passage of the Code, unless made within two years from such passage. The two years had not expired at the date of the decree, and in fact only a small part of it. At the date of the decree, therefore, Wyatt and Kelly had an equitable right to one hundred and ten acres of the land, and the right to proceed, at once, to obtain a deed therefor, according to the provisions of the Code; but the owners, their heirs or assigns, had at the same time the right to redeem at any time before the deed was made. And it was error in the court, as the case now appears, to make the decree of partition of the land at the date of the decree, unless prior to the making of the decree the land had been redeemed, in the manner prescribed by law, which does not appear to have been done. If Wyatt and Kelly do not show that they properly procured a proper and sufficient deed for the one hundred and ten acres within two years from the 29th day of December, 1868, the date of the passage of the Code, then it must be considered, and held, that their equitable right or interest had been extinguished. I think it entirely competent for the Legislature, in such cases, by subsequent law, to fix a time within which

purchasers at tax sales shall obtain their deeds. Pub--lic policy evidently requires that such authority should exist, and I don't see that a proper exercise of it vio--lates any constitutional inhibition. If Wyatt and Kel-ly establish, properly, that such deed as I have indi--cated, for one hundred and ten acres, was made to them within the two years last stated, and has been recorded according to law, then they are entitled to the one hun-dred and ten acres of land conveyed by such deed, un-less sufficient cause be shown to the contrary. It is evi-dent that the whole record of the case has not been brought before this Court. The parties seem to have considered that there was no other question in the case but that involved by the tax claim. The court in its decree determines that the land in the bill mentioned is owned as follows, to-wit: five-ninths of one moiety by John McConihay, and four-ninths by the heirs of Shrews-bury and Dickinson, one-half of the other moiety by the assigns of William and Andrew F. Donnally, and one-half of the other moiety by the heirs of William Forqueran and directs partition accordingly. This de--scription of the owners and the parties among whom partition shall be made is not sufficiently specific. The court in directing partition of lands, should, ordinarily, ascertain in the decree the names of the owner or per--sons, to whom any part is to be assigned, where they are not unknown. There is nothing in the record here showing who are the heirs of Shrewsbury or Dickinson, or who are the assignees of William and Andrew F. Don-nally. "The petition of John McConihay and the heirs of Joel Shrewsbury and the heirs of William Dickinson," mentioned in the decree, is not copied into the record, and as the record stands, I cannot ascertain whether the proper parties are before the court, in a proper manner, or among what parties partition should be made of the land in the bill mentioned, should Wyatt and Kelly be excluded, or denied any right. Under the circumstances and as the decree must be reversed for the error in rela-

tion to Wyatt and Kelly, it is perhaps not necessary that any other questions should now be determined, especially, when no question is made by counsel and no investigation or determination, of any other questions are desired at this time by any of the parties or their counsel.

For the foregoing reasons the decree of the circuit court of the county of Kanawha rendered in this cause on the 16th day of April 1869 must be reversed and annulled and the appellants recover against the appellee their costs about the prosecution of their appeal in this Court expended. And this Court proceeding to make such decree as the court below should have made the cause must be remanded to the circuit court of the county of Kanawha for further proceedings therein to be had, according to the principles determined in this opinion and the rules governing courts of equity in such cases; and leave is given the plaintiff to file a replication to the answer of the defendants Wyatt and Kelly, and to file an amended bill making additiona parties, if he shall ask so to do, and with leave to the defendants Wyatt and Kelly, to file a supplemental answer if they shall ask permission so to do.

PAUL and MOORE, Judges, concurred.

HOFFMAN, Judge, expressed no opinion in consequence of certain references to him in the foregoing opinion.

DECREE REVERSED AND SUIT REMANDED.