Moncure, J.,
after stating the case, proceeded :
First — Did the court err in excluding the deed from the jury ?
By an act which passed in October 1785, and took effect on the first day of January 1787, entitled “ an act for regulating conveyances,” it was, among other things, provided, that “ if the party who shall sign and seal any such writing,” (meaning a conveyance of real estate,) “ reside not in Virginia, the acknowledgment by such party, or the proof by the number of witnesses requisite, of the sealing and delivering of the writing before any court of law, or the mayor, or other chief magistrate of any city, town or corporation of the county in which the party shall dwell, certified'by such court, or mayor, or chief magistrate, in the manner such acts are usually authenticated by them, and offered to the proper court to be recorded within 18 months after the sealing and delivering, shall be as effectual as if it had been in the last mentioned court.” 12 Hen. Stat. 155. This provision (with an addition not necessary to be noticed) constituted the 5th section of the act passed the 13th of December 1792, also entitled “ an act for regulating conveyances,” which will be found in 1 Rev. Code of 1803, p. 136-9, and 1 Rev. Code of 1814, p. 218, 223. It remained in force, without any material alteration, until the revisal of 1819 ; the only alterations being those made by the act passed the 25th of December 1794, changing the word “ county” to “ country,” made (as the act recites) because some of the subdivisions of the United States, as well as of other countries, are not denominated by the term of counties ; and extending the period within which the deed might be offered for record, from eighteen months to two years. 1 Rev. Code 1803, p. 327 ; Id. 1814, p. 462.
By the 7th section of the act passed February 9, 1814, entitled “ an act to amend an act entitled an act *118 for regulating conveyances,” which passed the 13th of December 1792, it was enacted “ that any conveyance which shall hereafter be recorded after the expiration of the time now allowed by law for recording the same, shall take effect and be valid in law as to creditors and subsequent purchasers, from the time of such recording, and from that time only.” Sess. Acts of 1813-14, p. 36.
At the revisal of 1819 an act was passed entitled “ an act to reduce into one act the several acts for regulating conveyances, and concerning wrongful alienations.” 1 Rev. Code, ch. 99, p. 361. The 5th section of that act embraces, in a modified form, the provision before quoted from the act of October 1785, constituting the 5th section of the act of 1792 as aforesaid. The effect of the said 5th section of the act of 1819 being to authorize the admission of a deed to record on the certificate of a mayor, &c., only where the party as to whom the deed is certified resides “ out of the United States and the territories thereof,” instead of “ out of Virginia,” as in the acts of 1785 and 1792.
The 7th section of the act of Feb. 9, 1814, is substantially embodied in the 12th section of' the act of 1819, which provides that “All deeds of trust and mortgages, whensoever they shall be delivered to the clerk to be recorded, and all other conveyances, &c., which shall not be acknowledged, proved, or certified, and delivered to the clerk of the proper court to be recorded, within eight months after the sealing and delivery thereof, shall take effect and be valid as to all subsequent purchasers, &c. from the time when such deed of trust, &c. shall have been so acknowledged, proved or certified, and delivered to the clerk of the proper court to be recorded, and from that time only.” 1 Rev. Code 364, § 12.
*119 The only provision contained in the act of 1819 in regard to the authentication for record of deeds of parties residing out of Virginia but in the States, was the 7th section, which provided that any deed may in like manner be admitted to record upon the certificate under seal of any two justices of the peace for any county or corporation within the United States, or any territory thereof, or within the District of Columbia, &c.
Thus stood the law in regard to the authentication for record of deeds of nonresidents of Virginia in 1833, when the deed in question was admitted to record by the clerk of Jackson county, (except the act of Feb. 26, 1828, Sup. Rev. Code, ch. 155, p. 213, which does not affect the case under consideration;) and the question now is, whether that deed was legally admitted to record.
The deed was acknowledged by the grantors before the mayor of New York, and certified by him, after the passage of the act of October 1785, and about a month before that act went into effect. It was obviously intended to be acknowledged and certified in pursuance of the provisions of that act. The certificate is full and particular, and being made by the mayor in his official capacity, and under his official seal, should be presumed to be made in the manner such acts are usually authenticated by him. Ewing's heirs v. Savary, 3 Bibb’s R. 237. The deed recites that the grantors were of the state of Virginia; but the acknowledgment by them before the mayor of New York, and his certificate thereof, afford sufficient evidence that, for the time being, the grantors dwelt in that city, and were, when they acknowledged the deed, nonresidents of Virginia, in the sense in which the terms were used in the act of 1785. McCulloch v. Myers, 1 Dana’s R. 522; and a case referred to in note (i,) 1 Statute Law of Kentucky, p. 433, as *120 having been decided by the Circuit court of the United States for the Kentucky district at its fall term in 1833. See also Cales v. Miller, 8 Gratt., in which it was decided that the acknowledgment by the grantor of a deed before the mayor of Philadelphia afforded sufficient evidence that said grantor, for the time being, dwelt in that city, and said deed was duly authenticated for record, though it appeared on the face of the deed that he was of the borough of Wilmington in the state of Delaware. I think, therefore, that the deed in question would have been duly admitted to record, if it had been offered to the proper court for that purpose within eighteen months after the sealing and delivering thereof, as provided by the act of 1785. Not having been so offered, it became, after the lapse of that limitation, incapable of being admitted to record on the authentication aforesaid, until the passage of the act of February 9, 1S14; when, by the 7th section of that act, before recited, it became, I think, again admissible to record on the said authentication, but to take effect as to creditors and subsequent purchasers only from the time of such recordation. When that act was passed the deed in question was good between the parties, and had been authenticated for record according to the then existing law; but had not been recorded within the time allowed by law, and so was not valid as to creditors and purchasers. It was embraced both by the letter and the spirit of the said 7th section. But though it thus became again admissible to record, it was not, in fact, recorded until after the revisal of 1819 ; and the question now is, whether its admissibility to record was affected by any alteration then made in the law regulating conveyances.
In the case of Lockridge v. Carlisle, 2 Leigh 186, it was decided that ttíe 5th section of the act of 13th December 1792 was repealed by the 5th and 7th sec *121 tions of the revised statute of 1819, and that deeds executed in Kentucky in 1824 and 1826, acknowledged before a court of that state, and authenticated according to the act of 1792, were not duly registered in this state. The chancellor, from whose decree the appeal in that case was taken, held that the two statutes might well stand together, and that the provision of the statute of 1792 was not repealed by that of the statute of 1819 ; but his decree was reversed. .Brooke P., in delivering the court’s opinion, said: “ It is very probable that the legislature, by the provisions of the statute made in 1S19 on this subject, intended only to facilitate the acknowledgment of foreign deeds, by extending the authority to take acknowledgments of such deeds to two justices of the peace where the party executing the same resided in any of the United States or the territories thereof, and not to repeal the 6th section of the statute of 1792, which gave the authority to any court of record, mayor or chief magistrate &c. in every case in which the party executing such deeds did not reside in Virginia. But, as the authority in such case was by the statute of 1819 restricted to the case in which the party executing the deed resided without the United States and the territories thereof, and as also all laws of a general nature not published in the new Code were repealed by the 9th section of the statute providing for the republication of the laws, (1 Rev. Code, ch. 1, p. 16,) the 5th section of the statute of 1792 and all the subsequent statutes on the subject must be considered as repealed by the statute of 18.19.” I have referred thus fully to that case, for the purpose of showing the leaning of our courts against constructive repeals, and the grounds on which the 5th and 7th sections of the act of 1819 were considered as being repealed by the 5th section of the act of 1792 in its application to that case.
*122 But the question in this case is not whether, after the revisal of 1819, a deed could be authenticated for ' record according to the 5th section of the act of 1792 > but, whether a deed which, at the time of the said revisal, had been duly authenticated for, and was then admissible to, record, according to the existing law, could be admitted to record on such authentication after that revisal ? By the revised act of 1819, the legislature intended “to facilitate the acknowledgment of foreign deeds,” and to provide an easy mode of authentication by two justices of the peace where the party executing the same resided anywhere in the United States. There was no reason for retaining the more inconvenient and expensive mode prescribed by the 5th section of the act of 1792 in regard to parties residing out of Virginia but in the United States; and such parties could more easily conform to the provision of the act of 1819 than of that of 1792. The parties in Lockridge v. Carlisle seem not to have been informed of the alteration made by the act of 1819, and therefore conformed to the act of 1792. Had the legislature foreseen that such a case would occur, it would doubtless have retained the provision of the act of 1792, to which there could not have been the least objection, except that it imposed unnecessary trouble and expense on the parties. But not having foreseen such a case, and having passed laws inconsistent with the continuance of that provision, the court in the case referred to was compelled to regard the provision as repealed. But none of this reasoning applies to a case like the present, in which the deed had already been acknowledged and certified, and was then admissible to record according to law. It could not have been intended by the legislature, while facilitating the acknowledgment of foreign deeds, to require those who had already conformed to the more troublesome and expensive provision of the existing law, to con *123 form also to the provision of the new law. There would have been no reason in such a requirement, and it would have been fraught with inconvenience. death or removal of parties and lapse of time might in many cases render it difficult and even impossible to conform to the new law; and it would have been unjust to require it, after parties had gone to the trouble and expense of having their deeds authenticated for record according to the provision of the existing law- The legislature must have been aware that there were a great many cases in which deeds had been authenticated for record, but were not recorded, and in which no want of diligence could be imputed to the parties, and must have intended that all such deeds might be admitted to record without further authentication. Not to have so intended and provided would have been a flagrant wrong to all such parties. No such wrong was intended to be done, or has in fact been done. These cases are not only in the reason but are also in the letter of the law of 1819. The 7th section of the act of 1814, as already stated, is substantially embodied in the 12th section of the act of 1819; and for the same reasons that have already been assigned to show that the deed in this case could have been duly recorded under the former section, it could have been duly recorded under the latter. It was recorded after the act of 1819, to wit, in 1833; and not having been acknowledged, proved or certified, and delivered to the clerk of the proper court to be recorded within the time after the sealing and delivery thereof prescribed by that act, by the very terms of the act the deed took effect, as to all subsequent purchasers, &c. from the time when it was certified and delivered to the said clerk to be recorded, and from that time only, 1 Rev. Code 364. “ Several statutes in pari materia, and relating to the same subject, are to be taken together and compared, in the *124 construction of them, because they are considered as having one object in view, and as acting upon one system.” — “ And the rule applies, though some of the statutes may have expired, or are not referred to in the other acts. The object of the rule is to ascertain and carry into effect the intention of the legislature; and it is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions.” 1 Kent. Com. 463. “ Statutes are not considered to be repealed by implication, unless the repugnancy between the new provision and a former statute be plain and unavoidable.” Id. 466, note b, and cases cited. “ A construction, which repeals former statutes or laws by implication and divests long approved remedies, is not to be favored in any case.” Id. citing Cowen J., 3 Hill 472. For a strong case to show that “ virtual repeals of statutes are not favored by courts, see Taylor v. Shields' heirs, 5 Litt. p. 295: And I refer to the Kentucky cases more than any other, because they are upon some of the very statutes which are under consideration in this case. See also 1 Kent Com. 455 ; Dash v. Van Kleeck, 7 John R. 477; and Whitman v. Hapgood, 10 Mass. R. 437. Even if my construction of the act of 1819 were more doubtful than it is, I would incline to think that the right of the parties to have the deed in this case recorded on the authentication which was legal and complete at the passage of that act, was saved to them by the proviso in the act passed March 12,1819, for the republication of the laws, providing that the repeal of all acts not published in the Code should not impair any right accrued before the 1st day of January 1820, when the said repeal took effect, but such right might be maintained and asserted in the same manner as if there had been no such repeal. 1 Rev. Code, p. 16, § 9. For the foregoing reasons, I think the deed in *125 this case was duly recorded, and was therefore admissible in evidence.
I think the deed was admissible in evidence on another ground. By an act passed on the 8th of December 1792, it was declared that a deed, authenticated as this deed was, should be evidence in all the courts of record within this commonwealth as if the same had been proved in the said courts; and this continued to be the law of the land at least down to the revisal of 1849, which was after the trial of this case. The act is published entire as it originally passed, for it was never amended, in 1 Rev. Code 1803, p. 160; 1814, p. 223, and 1819, p. 371. It may be said that this act was passed after the deed in this case was authenticated, and therefore cannot apply to the case. But the deed being authenticated precisely according to the directions of the act, it surely could not have been necessary for the parties to be at the expense and trouble of doing the vain thing of having it reauthenticated precisely in the same way. The legislature was prescribing a rule of evidence: it declared that a paper authenticated in a certain way should be evidence; and this deed was 'authenticated precisely in that way. The act was remedial, and its application to cases coming up to its requisitions at the time of its passage injured nobody, while it saved unnecessary trouble and expense to the parties. The reason of the act applies to the case; and so do its words, which are, that all deeds executed by nonresidents, “if acknowledged,” &c. and “ certified,” &c. “ shall be evidence,” &c. This deed having been so acknowledged and certified, is therefore expressly made evidence by the act. The fact is, this act, as to deeds requiring recordation, was obviously intended to run on all fours with the act in regard to the authentication of deeds of nonresidents for record. So that whenever a deed of a nonresident was duly authenticated for record, it should be duly *126 authenticated as evidence in all the courts of record in the commonwealth. The similarity of the language of the two acts and the reason of the thing indicate that such was the legislative intention. The deed in this case having been duly authenticated for record under the act of 1785, was therefore duly authenticated as evidence in all the courts of record by the operation of the act of 1792.
The views I have expressed on the first error assigned in the judgment renders it unnecessary to consider the second; and I therefore forbear to give any opinion upon it. But, for the foregoing reasons, I am for reversing the judgment, setting aside the verdict, awarding a new trial, and directing that upon such new trial the deed, if again offered in evidence, be admitted as a duly recorded deed.
Allen and Samuels, Js. concurred in Moncure's opinion.
Daniel and Lee, Js. concurred in reversing the judgment on the last grounds stated in the opinion of Moncure, J.