# Wheeling.

12 183|
38 335|

12 183|
f46 107|
46 109|

12 183
63 576

CAMPBELL *et al.*, *v.* HUGHES *et al.*

Decided December 12, 1877.

1877.
Special Term.

1. Though it is common, and generally advisable, in an action of ejectment to have an executed order of survey of the lands in controversy before trial, still such executed order of survey is not in all cases necessary or indispensible. And when an order of survey has been made in the cause, but not properly executed by the surveyor, and the parties ˙proceed to trial without objection, and the plaintiffs during the trial offer the report and survey or plat, made by the surveyor under the order of survey, as evidence, and to the reading of said report and survey as evidence, the defendants by their counsel objected, and the court sustained said objection, and did not permit said report and survey to go to the jury as evidence, it was not error in the court to refuse to instruct the jury, "that in the absence of a proper and official execution of the order of survey, heretofore made in the cause, the plaintiffs cannot recover in this action," although it appears that the report of the surveyor under said order was read to the jury as evidence by the surveyor. The absence of a proper and official execution of the order of survey, made in the cause prior to the trial, should not necessarily prevent the plaintiffs from recovering in the action, if they are otherwise entitled to such recovery.

2. During the trial of an action of ejectment, in which there were several defendants, and the plea was not guilty, the defendants introduced a witness who testified, that a part of the defendants were at the institution of the suit, and then were infants, and that to the best of his recollection he informed one of the counsel of the plaintiffs of the fact before the commencement of such suit; and before the jury retired to consider of their verdict, the plaintiff asked the court to instruct

1877.
Special Term.

Campbell *et al.*
v.
Hughes *et al.*

the jury that "If the jury find from the evidence, that the defendants, Munsen C. Van Winkle, Henry Van Winkle, and Harriet Van Winkle, are infants, under the age of twenty-one, and that no guardian *ad litem* for them had been appointed in this cause, then their verdict must be for said defendants," which instruction the court refused.   HELD:

For reasons stated in the written opinion of this Court, that the court did not err in refusing to give said instruction to the jury.

3. It is not error for the court to refuse to give an instruction when it is irrelevant, or not applicable to the evidence.

4. An exception to an opinion of the court, refusing an instruction, does not state facts or evidence in the cause so as to show its relevancy; the Appellate Court will not undertake to decide whether the court did right or wrong in refusing the instruction.

5. If from the record there is any reason to believe a part of the defendants against whom final judgment is rendered, were infants during the pendency of the suit in which the judgment was rendered against the defendants, on a joint plea of not guilty, in ejectment, and no guardian *ad litem* was appointed for them in the suit, but the fact of such infancy does not so appear as to enable the Appellate Court to reverse the judgment, set aside the verdict, &c., upon *supersedeas* for that cause; and it does not appear that a motion to reverse or amend the judgment has been made before the court which rendered it, or the judge thereof, on account of such infancy, and failure to appoint a guardian *ad litem*, and that such motion has been overruled in whole or in part, the Appellate Court, in affirming the judgment in such case, may affirm it without prejudice to the rights of the defendants in the court below, or any of them, if so advised, to move said circuit court or the judge thereof to reverse or amend the original judgment in the cause against them upon the ground that some of the defendants were infants during the pendency of the cause in the court, in which said original judgment was rendered, and no guardian *ad litem* was appointed for them in said suit, and also without prejudice to such defendants, if so advised, to prosecute a writ of error *coram nobis* for the reversal of said original judgment, for the cause aforesaid, if such cause exist.

6. A case in which the Appellate Court passed on the question, whether several deeds appearing in evidence were properly authenticated.   (See opinion of the Court).

7. When the defendants moved the court to set aside the verdict of the jury, and grant a new trial, and the court overruled the motion, and the defendants failed to except to the opinion of court, and procure the court to certify all the evidence given or facts proven at the trial, if the verdict is substantially sufficient generally, the Appellate Court will presume that the opinion and judgment of the court, in overruling the defendants' motion, was right and proper, the contrary not appearing.

1877.
Special Term.

Campbell et al.
v.
Hughes et al.

Writ of error and *supersedeas* granted upon the petition of John Hughes, Andrew S. Cole and others, defendants, in a certain action of ejectment instituted against them, in the circuit court of the county of Ritchie, by Thomas Campbell and other infants, suing by their next friend, Catharine Campbell.

The judgment, which is here reviewed, was entered on the 2d day of May 1877 by the Hon. J. Monroe Jackson, judge of the fifth judicial circuit.

The case is fully stated in the opinion of the Court.

*R. S. Blair*, for plaintiffs in error, referred to the following authorities:

1 Minor's Inst. 432; 1 Rob. Pr. 172–3, 1st ed.; *Fox et al.* v. *Cosby*, 2 Call. 1; *Roberts* v. *Stanton*, 2 Munf. 129; *Brown* v. *McRea's ex'ors*, 4 Munf. 439; *Beverleys* v. *Miller*, 6 Munf. 99; *Brewer* v. *Boston & W. R. R. Co.* 5 Met. 478; Bigelow on Est. 530–1; 12 Hen. Statutes, 145; *Michigan Ins. Bank* v. *Eldred*, 6 Biss. 393.

*Walter S. Sands* also appeared for the plaintiffs in error.

*John A. Hutchinson* and *C. C. Cole*, for the defendants in error.

1. The proposition in the first bill of exceptions, that plaintiff in ejectment cannot recover without an order of survey, need only to be made to be rejected.

2. The deeds mentioned in second bill of exceptions were properly authenticated. 9 Hen. Stat. Large, 207 chapter 16 §2; *Hassler's lessee* v. *King*, 9 Gratt. 115; *Cales* v. *Miller*, 8 Gratt. 6; *Wells* v. *Cole*, 6 Gratt. 645; 1 Hen. Stat. Large 84, 293 (N. S.); Code Va. 1860, chapter 21, §§3, 4.

3. The instruction as to the infancy of some of the defendants was properly refused. If there was any error, it was in fact, not law. *Cole* v. *Pennell*, 2 Rand. 174; 1 Math. Dig. 283, note 2; *Reed* v. *Strider*, 7 Gratt. 76; Code W. Va. chapter 134, pp. 637, 638, §§1, 6; *Snead* v. *Coleman*, 7 Gratt. 300; *Jones* v. *Cunningham*, 7 W. Va. 707; *Baker* v. *W., M. & M. Co.*, 6 W. Va. 196.

4. There was no estoppel by any act of Thomas Campbell set out in exceptions four. *W. M. Co.* v. *Peytona Co.*, 8 W. Va. 433, 434; *Brant* v. *Va. Coal & Iron Co.*, 3 Otto 336.

5. No facts were certified on the overruled motion for new trial. *Adams* v. *Hubbard*, 25 Gratt. 129, 136.

HAYMOND, JUDGE, delivered the opinion of the Court:

This is a case in ejectment brought in the circuit court of the county of Ritchie. On the 24th of April 1876, at a circuit court held for the said county of Ritchie, the following order was entered of record in the case, viz: "This day the plaintiffs presented their declaration and notice in ejectment, which appears to have been duly served on all the defendants except Godwin VanWinkle; and upon motion of the said plaintiffs it is ordered, that the action be docketed in this court; and thereupon the defendants appeared by counsel, and demurred to said declaration and each count thereof, and for plea say, that they are not guilty of unlawfully withholding the premises, as in the plaintiffs' declaration against them is alleged, and of this they put themselves upon the country; and the plaintiff doth the like; issue is thereon joined." The declaration contains two several counts in

the name of the same plaintiffs, against the same defendants. The first count is for five hundred acres of land described by metes and bounds, in the said county of Ritchie, and the second count is for five thousand acres, described by metes and bounds, in the same county. The notice accompanying the declaration is, that it would be filed in the circuit court of said county on the first day of the next term thereof, &c.

On the 27th day of April 1876, two days after the filing of the declaration &c., it appears by the record, that on motion of the plaintiffs it was ordered by the court, that the surveyor of the said "county do go upon the land in controversy in this action, and do such surveying as either party may require, and make and return to court seven fair plats thereof with a report of the work done by him; said surveyor shall give five days' notice of the time he will do such surveying." It further appears, that afterwards, on the 20th day of October 1876, on motion of the plaintiffs' counsel, it was ordered by the court that the plats and reports of the county surveyor be recommitted to him with leave to either party to have made further surveying as they may elect, and that he make and return seven fair plats and surveys of the work done by him. Afterwards, on the 30th day of April 1877, as appears by the record, the parties by their attorneys appeared in court and the demurrer theretofore filed was overruled by the court; and thereupon came a jury of good and lawful men, who were duly elected, tried and sworn the truth to speak upon the issue joined. And on the 1st day of May 1877 the jury found a verdict for the plaintiffs as follows:

"We, the jury, find for the plaintiffs named in the foregoing declaration in this action, and that they have right to the possession of the tract of five hundred (500) acres in the declaration mentioned, and described on a plat made by Robert Triplett, late surveyor of Wood county, in a sub-division of lot No. 9 of Worth's Chain of Surveys as lot No. 3 in the said sub-division, made by said

Triplett for Jacob Moore, as shown  by copy of said plat of said sub-division, filed in the  papers  of this cause marked letter "C," and recorded in Deed Book 10, page 1, in the records in the clerk's office of the  county court of Wood  county, said lot No. 3 containing five hundred acres, lying and being in Ritchie  county,  and bounded as follows, that is to say : Beginning at  hickory, gum, beech and dogwood corner to lot No. 4 ; thence running north 45° west 234 poles and 15 links ; thence north 45° east 341 poles ; thence south 45° east  234 poles and  15 links ; thence southwest 341 poles to the place of beginning, and lying between lots Nos. 2 and 4 on said sub-division plat, and including the tract of fiftyfour and one-half acres of land—the land in controversy in this action.  And further find that the plaintiff, Catharine Campbell, hath an  estate for her life in one undivided third part of said five hundred acres of land; and that the others of said plaintiffs have an estate in fee in the said five hundred acres, subject to the said life estate of the said Catharine Campbell in and to the said undivided third part.  And we further find that the defendants, at the commencement of this action, unlawfully withheld from the plaintiffs the  possession of the said tract of five hundred acres of land."

And thereupon, upon motion of the defendants, by their attorneys, the judgment on this verdict is suspended until to-morrow.

On May the 2d, 1877, it further appears, that the parties appeared in court by their attorneys ; and the defendants moved the court to set aside the verdict, and grant them a new trial ; but the court overruled the motion.  Thereupon the court rendered judgment, that the plaintiffs recover against the defendants the possession of the tract of five hundred acres of land, as mentioned, described and bounded by metes and bounds in the verdict of the jury, and that the plaintiffs recover their costs, &c.  It further appears that during the trial of the cause the defendants filed five separate bills of ex-

ceptions, marked Nos. 1, 2, 3, 4, 5, and that the same were duly signed, sealed and made a part of the record. To the said final judgment of said court, rendered in the cause as aforesaid, the defendants upon their petition with assignment of errors in said judgment therein, obtained from one of the Judges of this Court in vacation a *supersedeas*; and thus the said judgment is before us for review and determination, as to whether there is such error therein, as that this Court should reverse the same.

1877.
Special Term.

Campbell *et al.*
v.
Hughes *et al.*

The errors assigned by said defendants in their said petition are the following, viz:

1. The court erred in not giving the instructions asked for in bill of exceptions No. 1. The court, upon the motion of the plaintiffs, had directed a survey and plat to be made for either party, and at that time deemed the same necessary to the trial of the action. The defendants, excepting A. S. Core, had no opportunity to attend the survey, upon which the plat was based; and the plat was inadmissible, even as a *private* paper, for that reason.

2. The court erred in permitting the deeds and paper writings mentioned in bill of exceptions No. 2 to go to the jury. The plaintiffs, to maintain the issues upon their part, offered the same in evidence to sustain the strength of their alleged title against parties defendants, alleged to be in possession of the land in controversy. The deeds were not properly authenticated, and therefore were not proper evidence; and the alleged plat of Robert Triplett was unsupported by any evidence.

3. The court erred in refusing the instruction asked for, and referred to in bill of exceptions No. 3. It was in evidence before the court, that four of the defendants were children of Rathbone Van Winkle, deceased, and grandchildren of P. G. Van Winkle, deceased. These children were minors; the counsel for plaintiffs knew it; the court knew it. A judgment against them, no guardian *ad litem* being appointed, was a nullity, and being a nullity against them, was so as to all the parties upon the record. The court could not divide or separate the

verdict.   See Minors' Institute, pp. 432, 433, 474, 475, and cases there cited.

4. The court below erred in refusing to give to the jury the instruction asked for in bill of exceptions No. 4. If the facts therein stated by the witnesses were found by the jury to be true, the law of estoppel certainly bound the plaintiffs in this action.

5. The court erred in refusing to set aside the verdict of the jury. There is nothing in the record showing any boundary or description of the land in controversy, whereon a verdict of a jury could be based. The verdict given is not in any manner sustained by the alleged plat of Robert Triplett. And again the verdict was contrary to all the facts and law of the case, the same assuming to pass upon the right of the infant defendants, they not being properly before the court.

I will proceed to consider these assignments of error consecutively.

Syllabus 1.

*As to the first assignment of error.*   By reference to the defendants' bill of exceptions No. 1, it appears that the plaintiffs offered in evidence the report and survey of the surveyor, made in the cause in pursuance of the orders of survey made in the cause, and the defendants by their counsel objected to the same being read in evidence, upon the ground that the surveyor had notified only the plaintiff, Catharine Campbell, and the defendant, Core, of the time and place of executing the order of survey; and the court sustained the objection, and refused to permit the said report and survey to go in evidence before the jury; but did permit the said surveyor, who was John Douglass, to refer to and use said "plat" as a private paper, and explain his knowledge of the lands in controversy, and to identify and locate the lands as claimed by plaintiffs and defendants, and to refresh his memory upon his examination in the cause as a witness; but said plat and survey were not permitted to go before the jury.

After these facts are detailed in said bill of exceptions,

the bill of exceptions then proceeds: "surveyor Douglass's report under the order of the court aforesaid was read in evidence before the jury." I suppose this means, that said report was read to the jury as evidence; but that the report and plat were not permitted to go to the jury as evidence. But be this as it may, I regard it as wholly immaterial, under the view I take of the exception. After this the exception then proceeds: " And thereupon at the conclusion of the evidence in the cause the defendants asked the court to give to the jury the following instruction, viz: 'That, in the absence of a proper and official execution of the order of survey heretofore made in this cause, the plaintiffs cannot recover in this action,' which instruction the court rejected, and refused to give to the jury. To which ruling of the court, refusing to give said instruction, the defendants by their counsel excepted." By this bill of exceptions no ruling or opinion of the court is excepted to, except the refusal of the court to give said instruction. All other matters stated in said bill of exceptions, which were done or allowed by the court touching the use of said surveyor's report at the trial for any purpose, seem to have been done and allowed without objection on the part of the defendants; and they must be considered in this court as having acquiesced therein; and it is not proper for this court to determine any question, except such as was objected and excepted to.

I am not aware of any law being in existence, which requires that an order of survey shall be made, executed and returned in an action of ejectment before it can be tried; nor do I know any law that forbids the trial of an action of ejectment in the absence of a proper, and official execution of an order of survey made in the cause. In many cases it is proper and even necessary, to enable the plaintiff to identify the land demanded, to have an order of survey, and have it properly executed; but it cannot be said that it is indispensible in every case. In many cases the land, demanded by the plaintiff and in con-

1877.
Special Term.
Campbell *et al.*
v.
Hughes *et al.*

troversy in the case, may be sufficiently identified without an order of survey and the execution of it in the cause. I am not aware that it has ever been held, that if on motion of the plaintiff an order of survey has been made in the cause, such order must be properly executed before trial can be had, or that if it has not been properly executed, and if a trial is had in the absence of such order being executed, the defendants are for that reason entitled to have a verdict in their favor. If the order of survey has not been properly executed, which was made at the instance of the plaintiff, and the defendant deems it necessary and proper, that it should be executed before trial, to the end that he may have a fair trial, perhaps he may, under the circumstances, insist upon the survey being made, and report made by the surveyor, before trial is had. If the order of survey made in this cause was not properly executed, and the defendants deemed it necessary for their defense, that it should be so executed before trial, they should have objected to the trial until the order of survey had been properly executed. But in this cause the surveyor did make a survey and report, which was not permitted to go to the jury, at the instance of defendants' counsel; and I do not feel authorized to determine, that the court erred in this case in refusing to instruct the jury "that in the absence of a proper and official execution of the order of survey, heretofore made in the cause, the plaintiffs cannot recover in this action." The first error of the defendants assigned in their said petition is therefore not well grounded, and is overruled.

By bill of exceptions No. 2, it appears, that after the jury were sworn, the plaintiffs, to maintain the issue on their part, offered in evidence copies of the following deeds: 1st, a deed from John Hart to Claudius P. Raguett, dated the 2d day of March, 1786, and recorded in the office of the county clerk of Harrison county on the 3d Monday of November 1804. This deed appears to be for five thousand acres of land. It further appears by

said last named bill of exceptions, that to the admission of the deeds and paper writings, in that bill of exceptions mentioned and recited, the defendants by their counsel objected, on the ground that they were not properly authenticated, and no other reason or objection was made to said deeds or papers by defendants, which objection the court overruled; and the said deeds and paper writings were permitted by the court to be read as evidence to the jury, to which ruling of the court the defendants by their counsel excepted," &c. I will first consider as to whether the court erred in admitting as evidence the said deed from Hart to Raguett for five thousand acres of land.

This deed has attached to it the following certificates and writings, viz:

" STATE OF PENNSYLVANIA, Sct:

" Before the subscribers, 'two the justices' of the court of common pleas in and for said city and county of Philadelphia, in the State of Pennsylvania, appeared the above named John Hart, and acknowedged thé above written indenture to be his act and deed, to the intent it may be recorded according to the laws of Virginia.

" In testimony whereof, we have set our hands and seals this 5th day of May, 1786.

" EDW. SHIPPEN. [Seal.]<br>
" WILLIAM RUSH. [Seal.]

" I do acknowledge to have received the full consideration in the within written indenture mentioned.

" Teste :  " JOHN HART.
    " ELIAS DAWSON."

" PHILADELPHIA COUNTY, Sct:

" I, Jonathan Bayard Smith, Esquire, prothonotary of the county court of common pleas for the county of Philadelphia, do hereby certify that Edward Shippen and William Rush, Esquires, the persons taking the foregoing acknowledgment, are justices of the peace, in and

1877.
Special Term.
———
Campbell *et al.*
v.
Hughes *et al.*

for the county court of common pleas for the county of Philadelphia, and that to all acts and decrees, by them done and subscribed, full credit is and ought to be given.

"In witness whereof, I have hereunto affixed the common seal of the said county court of common pleas, and set my hand, the 27th day of May, in the year of our Lord one thousand seven hundred and eighty-six.

" J. B. SMITH."

" At a court held for the county of Harrison, on the third Monday in November 1804, this indenture was presented in court, and ordered to be recorded *perpetuam memoriam.*         " Teste:

B. WILSON, *C. H. C.*

" A copy—Teste:
     "JAMES H. TAYLOR,
          " *Clerk of Harrison County Court.*"

" WEST VIRGINIA, HARRISON COUNTY, TO-WIT:

"I, James H. Taylor, clerk of the county court of Harrison county, do hereby certify that the foregoing is a true copy of a deed now of record in my office.

" Given under my hand this 28th day of April, 1877.
     " Teste:

" JAMES H. TAYLOR,

" *Per J. D. Repp, Deputy Clerk, for J. H. Taylor, Clerk.*"

It is provided by the first section of chapter 16 of the act of the General Assembly of the Commonwealth of Virginia, passed October 1776, " that when the parties making such deeds shall reside in any of the States of America, and there shall happen to be no city or town corporate within the county wherein they shall dwell, a certificate under the hands and seals of two justices or magistrates of the county, that such proof or acknowledgment hath been made before them, together with certificate from the governor, under the seal of such State, or from the clerk of the county court, under the common

seal of the county, that the persons certifying such proof or acknowledgment are justices or magistrates within the same, shall authorize the recording of such deeds, and make them effectual as aforesaid." This act does not specify any time within which deeds, acknowledged thereunder, shall be recorded. See 9th Vol. Hen. Stat. at Large, p. 207.

Counsel for defendant in his brief on this subject, says: " The first deed, to which we will call the attention of the court, will be found on the seventeenth page of the printed record, from John Hart to Claudius P. Raguett, dated 2d day of March 1786. The court upon inspecting the certificate of acknowledgment, will see that it is wholly insufficient. The acknowledgment purports to have taken before two justices, which was not authorized by our law at that time. (See Hen. Stat. vol. 12, p. 155); and therefore, as we maintain, was improperly admitted as evidence of title before the jury, and ought to have been rejected." No other objection whatever to the authentication of said deed or the admissibility of the same as evidence is made before us by the counsel of the defendants below, and no other appears to have been made in the court below by the counsel of defendants. By reference to the certificate of acknowledgment of the deed in question it will be seen, that it is dated the 5th day of May 1786. The act of the General Assembly of Virginia, which was passed in October 1785, to be found in 12th vol. of Hen. Stat. p. 154, and to which the counsel for defendant refers in his brief in the last clause thereof, expressly provides that, " This act shall commence and be in force from and after the 1st day of January 1787." From this it is clear that the deed in question was acknowledged before the said act of 1785 took effect, and while the act of October 1776 was in force, as I have not been able to find any act repealing in whole or part the act of 1776 before the acknowledgment of the deed in question. Upon the principles settled in the case of *Hassler's lessee*

v. *King*, 9 Gratt. 115; *Cales* v. *Miller*, 8 Gratt. 6; *Wells* v. *Cole et al.* 6 Gratt. 645, it seems to me that the reason assigned by the counsel of said defendants, why the said deed from Hart to Raguett was not properly authenticated, is not well founded. I have not considered the question as to whether the said deed was recorded in proper time, because no question of that kind is involved in the exception. If it had been objected in the court below, that the deed was not recorded in proper time, and the like, the plaintiffs might have produced the original deed and certificates thereto, or otherwise proved the execution of the deed. *Wise* v. *Postlewait*, 3 West Va. 457; section 21, chapter 130 Code of West Va.

The said second bill of exceptions then proceeds as follows, viz: "2d. A deed from Robert Ralston, assignee of Charles Young and Claudius Paul Raguett, to John Young dated the 25th of June 1798, and recorded in the office of the clerk of Harrison county on the 3d Monday of November 1804, which deed was accompanied by a written consent of R. S. Blair, one of the counsel for defendants, dated the 26th of April 1877." To this deed is appended the following certificates, viz:

"COMMONWEALTH OF PENNSYLVANIA, *ss:*

"Before me, Thomas McRean, Esq., chief justice of the said commonwealth, personally appeared the above named Robert Ralston, and acknowledged the above indenture to be his act and deed, to the intent that it may be recorded as such according to the laws of Virginia.

"In testimony whereof, I have hereunto set my hand and seal, this 17th day of July 1798.

"THOMAS McREAN. [Seal]."

"At a court held for Harrison county, on the third Monday in November 1804, this indenture was presented in court and ordered to be recorded in *perpetuam rei memoriam.*          "Teste:     B. WILSON, *Clerk.*

"A copy—Teste:     "JAMES H. TAYLOR,
          "*Clerk of Harrison County Court, W. Va.*"

"WEST VIRGINIA, HARRISON COUNTY, TO-WIT:

"I, James H. Taylor, clerk of the county court of said county, do hereby certify that the foregoing is a true copy of a deed, now of record in my office.

"Given under my hand, this 28th day of April 1877.

"Teste:

"JAMES H. TAYLOR, *Clerk.*
"*Per J. D. Repp, Deputy Clerk.*"

The within consent of R. S. Blair, one of the attorneys for the defendants above referred to, is as follows, viz:

"CATHARINE CAMPBELL AND OTHERS,
*vs.*
"JOHN HUGHES AND OTHERS.
} *In Ejectment.*

"*In the Circuit Court of Ritchie County:*

"It is admitted by the defendant aforesaid, by his attorneys, for the purpose of evidence on the trial of said action on the part of the plaintiffs, that Robert Ralston, assignee, &c., for Charles Young and Claudius P. Raguett, had full power and authority sufficient to make, execute and deliver the deed or indenture, which was made and executed by him as such assignee, &c., to one John Young, bearing date the 25th day of June 1798, purporting to convey thereby a certain tract of five thousand acres of land, purporting to be situate on the waters of Hughes river, then in Harrison, now in Ritchie county, West Virginia.

"R. S. BLAIR,
"*Attorney for Defendants.*

"*April 26th, 1877.*"

I am not aware of any law authorizing the acknowledgment of a deed before the chief justice of another State in 1798, and none has been brought to our attention. I therefore think that the acknowledgment of this deed before Thomas McRean, chief justice of Pennsyl-

1877.
Special Term.

Campbell et al.
v.
Hughes et al.

vania, is not good. But I think the written consent of R. S. Blair, one of the attorneys for the defendants, not only admits that Robert Ralston, assignee, &c., for Charles Young and Claudius P. Raguett, had full power and authority to make, execute and deliver the said deed, but it also admits that he did make said deed on the 25th day of June 1798. The deed, as copied into said bill of exceptions, purports to be for five thousand acres of land on the waters of Hughes river. I do not understand from said bill of exceptions, that said written consent was repudiated or objected to in any respect by the counsel of defendants, but that it was offered and received by the court as evidence without objection. While therefore it seems to me, that the said last named deed was not properly authenticated so as to be evidence by virtue of the authentication, still I think it was not error in the court to admit it under said written consent. The said second bill of exceptions then proceeds: " 3d A deed from John Young to Jacob Moore, dated September the 10th, 1805, and recorded in the office of the county clerk of Wood county, on the 7th day of April 1806." This deed purports to be for five thousand acres on the waters of Hughes river, and has the following certificates thereto appended, viz :

" BALTIMORE COUNTY, ss :

"Be it remembered, That on the 17th day of October, A. D. 1805, came before me, one of the associate judges of Baltimore county court, the above-named John Young and Mary, his wife, and acknowledged the above-written indenture to be their act and deed, and desired the same to be recorded as such—the said Mary thereunto voluntarily consented, she being of full age, secretly and apart examined, and the contents thereof being first made known unto her, as witness my hand the day and year aforesaid.

"ELIAS GLENN."

" BALTIMORE COUNTY, SCT.:

"*Be it remembered,* That on the 27th day of February, in the year of our Lord one thousand eight hundred and six, personally came before the Hon. Thoroughhad Smith, Esq., mayor of the city of Baltimore, John Young, and acknowledged the within deed and indenture to be his act and deed, according to the true intent and meaning thereof, and also his wife, Mary Young, and acknowledged the said deed and instrument of writing to be her act and deed, and the land and premises herein conveyed to be the right and estate of the said Jacob Moore, his heirs and assigns, forever. And the said Mary Young being privately examined apart from and out of the hearing of her husband, whether she doth make her said acknowledgment willingly and freely, without being induced thereto by fear or threats of ill usage by her 'husband, or fear of his displeasure, acknowledged that she doth willingly and freely and without fear of threats, &c.

"In testimony whereof, I have directed the seal of the corporation of the city of Baltimore to be hereunto affixed, as witness my hand the day and year above written.                     "THOROUG. SMITH,

    "[Seal].          "*Mayor of the City of Baltimore.*"

"STATE OF MARYLAND, BALTIMORE COUNTY, *Sct:*

"I hereby certify that Elias Glenn, gentleman, before whom the within acknowledgment was taken, and who hath hereto subscribed his name, was at the time of so doing, one of the associate justices of Baltimore county court, duly commissioned and sworn, and to all above acts as such due faith and credit is and ought to be given as well in courts of justice as there out.

"In testimony whereof, I have hereunto set my hand and affixed the seal of my office, this 3d day of March, in the year of our Lord eighteen hundred and six.

                        "WM. GIBSON,
          "*Clerk Baltimore County Court.*"

"At a court held for Wood county, on the 7th day of April 1806, this deed was produced in court with the annexed testimonials, and by the said court ordered to be recorded.

"Teste :

"JOHN STOKELY, *Clerk.*

"I, Will Hatcher, clerk of the county court of Wood county, hereby certify that the foregoing writing is a true copy from the records of my office.

"WILL HATCHER, *C. W. C. C.*"

It seems to me that this deed was properly authenticated by the certificate of the mayor of the city of Baltimore. See 5th section of chapter 28, Statutes at Large, new series, page 35, passed December 13, 1792, chapter 6; same book, act passed December 25, 1794, page 293 : Revised Code of 1803, page 327 ; Revised Code of 1814, page 462 ; *Hassler's lessee* v. *King,* 9 Gratt. 115.

Said bill of exceptions next proceeds as follows :

"4th. A plat made by Robert Triplett, of five thousand acres of land in Wood county, recorded in the office of the clerk of the county court of Wood county, in deed book No. 10, page 1, (which plat is shown in the manuscript record).

"The above five thousand acres of land, lying in Wood county, Virginia, were surveyed for Jacob Moore, by Robert Triplett."

"I, Edward M. Hoit, recorder of Wood county, West Virginia, do certify that the above is a correct copy of plat recorded in the recorder's office of Wood county, deed book No. 10, page 1.

"EDW. M. HOIT, *R. W. C.*"

"5. A deed from Clarissa Lord and William B. Caswell and wife, to Thomas Campbell, dated February 25, 1855, and recorded in the office of the county clerk of Ritchie county, in deed book No. 4, page 211, which deed is as follows, to-wit :

"This deed made this 29th day of February, 1855 between Clarissa Lord, and Wm. B. Caswell and Clarissa his wife, of the county of Wood and state of Virginia, of the first part, witnesseth: That for and in consideration of one thousand dollars, four hundred of which is in hand paid, the receipt whereof is hereby acknowledged, and of six hundred dollars to be paid in three annual installments, from date, with interest on the two last payments from the 1st day of January 1856, for which a lien is reserved on said land by this deed, the parties of the first part have bargained and sold, and by these presents, do bargain and sell to the party of the second part, the said Thomas Campbell, a certain piece, parcel tract of land lying and being in the county of Ritchie, on Lynn run, a water of Goose creek, and on the Northwestern Virginia Railroad, being lot No. 3 in a divisional survey made by Robert Triplett of the Moore tract of five thousand acres, being the same lot of five hundred acres, described as lot No. 3 in a deed from A. J. B. Schwartze to H. V. Loid, which deed is recorded in the county of Ritchie, in deed book No. 1, page 522, and the divisional —— and plat made by said Robert Triplett of the tract of five thousand acres, is in book No. 10, page 1, of the records of the county court of Wood county, to which deed of Schwartze and divisional plat, reference is to be had for a more particular description of the location and boundaries of said land—to have and to hold the said land to the said Campbell—his heirs forever. And the parties of first — warrant generally the title to the said land to the said Campbell.

Witness these hands and seals, the day first above written.

"W. B. CASWELL,          [Seal].
"CLARISSA L. CASWELL,     [Seal].
"CLARISSA LORD.           [Seal]."

" WOOD COUNTY, TO-WIT :

"I, Stephen C. Shaw, a notary public for the county aforesaid, in the State of Virginia, do certify that

1877.
Special Term.

Campbell et al.
v.
Hughes et al.

Clarissa L. Caswell, wife of Wm. B. Caswell, whose names are signed to the foregoing writing, bearing date on the 28th day of February 1855, personally appeared before me in said county, and being examined by me privily and apart from her husband, and having the said writing fully explained and made known to her, she, the said Clarissa L. Caswell, acknowledged that she had executed the same, and had done it willingly, and does not wish to retract it. And I, the said notary public, do further certify that the said Wm. B. Caswell and Clarissa Lord, whose names are also signed to said writing, have acknowledged the same before me in my county aforesaid.

"Given under my hand at the county aforesaid, this 28th day of February 1855.

"S. C. SHAW,
"Notary Public."

"RITCHIE COUNTY, CLERK'S OFFICE, }
"March 6th, 1855. }

"The foregoing deed with certificate of acknowledgment thereto annexed, was duly admitted to record in deed book No. 4, page 211.

"Teste :

"JAMES McKINNEY, C. R. C."

The plat made by Robert Triplett, recorded in the clerk's office of the county court of Wood county, in deed book No. 10, page 1, is referred to in the said deed from Lord, Caswell and wife, to Campbell, for boundary and the reference thus made in said deed to said plat, makes it as recorded in said deed book No. 1, a part of the deed, and I see no reason why an official copy of the said plat as recorded in said deed book No. 1, page 10, should not be admitted as evidence with the said deed with reference to the boundary of the land conveyed by the said deed, if it was proper for the deed to go to the jury. And I think there is not, and cannot be, any question as to the authentication of this deed. This

deed was clearly properly acknowledged before a notary public.

1877.
Special Term.

Campbell *et al.*
v.
Hughes *et al.*

The said bill of exceptions No. 2, then concludes as follows, viz:

" To the admission of which deed and paper writings aforesaid, on the grounds that they were not properly authenticated, and no other reason or objection was made to said deeds or papers by defendants, the defendants by their counsel objected, which said objections, being argued by counsel and considered by the court, were overruled, and the said deeds and paper writings permitted by the court to be read in evidence to the jury. To which ruling of the court overruling said objections, and permitting said deeds and paper writings and each of them to go to the jury, and be read in evidence and considered by the jury, the defendants by their counsel excepted, and this their bill of exceptions tender, and pray that the same may be made part of the record of this cause, which is accordingly done.

"JAS. M. JACKSON. [Seal]."

Upon the whole I do not feel satisfied, that there is any error in the rulings of the court below, which is brought before us by said bill of exceptions No. 2, and the argument of counsel of defendants below. It is proper to remark in addition, that in the case of *Hassler* v. *King*, 9 Gratt. 115, the bill of exceptions showed, that the plaintiff offered no other evidence of the execution and acknowledgment of the deed or deeds in question; but said bill of exceptions No. 2, does not state or show that the plaintiffs offered no other evidence of the execution and acknowledgment of the deeds and writings therein mentioned and objected to. Perhaps it was not necessary to do so in this case; but, under the view I have taken, it is immaterial and not necessary to decide.

*As to defendants' assignment of error, No.* 3. By the defendants' bill of exceptions, No. 3, it appears " that upon the trial of the cause, after the jury were empanneled and sworn to try the issue joined in said cause, the

Syllabus 2.

defendants, to prove and maintain the issue upon their part, called as a witness one W. W. Van Winkle, who testified that the defendants, Munson C. Van Winkle, Henry C. Van Winkle, Juliet Van Winkle, and Harriet G. Van Winkle, were at the time of the institution of this suit, and still are, the infant children of one Rathbone Van Winkle, and that the said witness, to the best of his recollection, informed C. C. Cole, one of the plaintiffs' counsel, of the fact before the commencement of this action ; that said Rathbone Van Winkle, now deceased, Godwin Van Winkle and Mary C. Blackford, wife of J. G. Blackford, were the only children of Peter G. Van Winkle, deceased, and that the witness was the administrator with the will annexed of the estate of said Peter G. Van Winkle, deceased, and the witness as such had signed the title bond for fifty acres of land—portion of the land in controversy—dated the 8th day of December 1873,.to John Hughes, which title bond is in the words and figures following, to-wit:

"This agreement, made and entered into, this 8th day of December 1873, by and between A. S. Core and the administrator of P. G. Van Winkle, of the first part, and John Hughes, of the second part, all of West Virginia, witnesseth : That the parties of the first part have this day sold to the party of the second part, one certain piece of land in the county of Ritchie and State of West Virginia, adjoining the lands of Mrs. Campbell, and known as the fifty acres surveyed by John Douglass for said Hughes, and for which land the party of the second part binds himself to pay to the parties of the first part $12.00 per acre, as follows, to-wit: $300.00 in hand when this agreement is signed, and the balance as soon as the parties of the first part do make to the parties of the second part a good deed for the said land, which deed is to be made within sixty days from this date. And it is understood that the party of the second part takes possession of the said land this day.

"In witness, we, the parties, set our hands and seals this above date.

"A. S. CORE,                [Seal].
"JOHN HUGHES,            [Seal].
"W. W. VAN WINKLE,    [Seal].
"*Adm'r of P. G. Van Winkle.*"

"The will of Peter G. Van Winkle was not produced, the witness stating he did not have it with him, and the counsel for the plaintiffs remarking they did not desire it. The witness was not called upon the stand until after the plaintiffs had closed their testimony, and the defendants had examined two witnesses on their behalf, to-wit: Elijah Hissem and Alexander Core; and after the examination of said W. W. Van Winkle, the defense called A. S. Core and John Hughes as witnesses, and produced their title papers under which the land in controversy was claimed by the defendants; and the said W. W. Van Winkle, administrator with the will annexed of the estate of Peter G. Van Winkle, deceased, was in court during said trial, aiding and assisting therein on behalf the defendants. Whereupon, and before the jury retired to consider of their verdict, the counsel for the defendants asked the court to instruct the jury as follows:

"'If the jury find from the evidence that the defendants, Munson C. Van Winkle, Henry Van Winkle, Juliet Van Winkle and Harriet Van Winkle, are infants under the age of twenty-one, and that no guardian *ad litem* for them had been appointed in this cause, then their verdict must be for said defendants.'

"Which said instruction the court refused to give, and did not give to the jury; and to the ruling of the court refusing to give said instructions to the jury, the defendants, by their counsel, excepted, and this their bill of exceptions tendered, and prayed that the same may be signed, sealed and saved to them, which is accordingly done.                "JAS. M. JACKSON,    [Seal]."

As to this bill of exceptions, it may be remarked that it contains much matter not necessary to have been stated therein ; but it does not appear therein that any evidence was given to the jury, showing or tending to show that a guardian *ad litem* had or had not been appointed for the infant defendants, if there were any. The bill of exceptions does not purport to state all the evidence given to the jury as to the infancy of any of the defendants ; and there is no bill of exceptions disclosed by the record, containing or purporting to contain all the evidence given at the trial, or all the facts proven. Again, it cannot be maintained that infancy is a good plea in bar to an action of ejectment.   Infants are liable to a recovery in ejectment.   It is right and proper that guardian *ad litem* should be appointed for infant defendants in ejectment at the proper time ; and the plaintiff in such action should see that such guardian *ad litem* is appointed at the proper time, and the infant should appear and defend by guardian *ad litem*.   See 1 Rob. Prac. (old); 172, 173; *Fox et al.* v. *Corby,* 2 Call. p. 1; *Roberts* v. *Staunton,* 2 Munf. 129; *Brown* v. *McRae's ex'ors,* 4 Munf. 429 ; *Beverly* v. *Miller,* 6 Munf. 99.

But in this case, as to whether the defendants or any of them were infants or not, or a guardian *ad litem* had been appointed, the jury had nothing to do. And if it were true that part of the defendants were infants, and no guardian had been appointed to defend for such infants, that would not authorize the jury to find the issue for such infant defendants.   But where the proofs show that a part of the defendants were infants, and no guardian had been appointed for them, it might perhaps be cause for a new trial.   And when judgment was rendered on the verdict, and a part of the defendants were infants, and the fact properly appeared on the record, it might be cause of reversal upon writ of error.

In this case none of the defendants are sued as infants. Nor does the record show that a guardian was ever ap-

pointed, or appeared for any of the defendants as infants.

In fact nowhere in the record is it intimated that any of the defendants are infants, except in said bill of exceptions No. 3.    It seems to me that the court did not err in refusing to give said instruction asked and refused by the court, as stated in said bill of exceptions No. 3.    The said third assignment of error is therefore not well taken, and is overruled.

*As to the defendants' fourth assignment of error.*    By the defendants' bill of exceptions No. 4; it appears that "after the jury was impaneled and sworn, in order to support the issue on their part, defendants introduced two witnesses, viz: Alexander Core and Elijah Hissem.   Core swore that in the year 1859, or the early part of 1860, he was sent upon the land in controversy by one of the defendants, Andrew S. Core, to make staves and get out cross-ties, and that he was instructed by said A. S. Core, before beginning work on said land to see Thomas J. Campbell, the husband of Catharine Campbell, and father and father-in-law of the other plaintiffs, and to ascertain from him, Thomas J. Campbell, where his line was between A. S. Core and Peter G. Van Winkle and said Thomas J. Campbell, before cutting any timber of any kind or character.   Before cutting any timber, Alexander Core called on the said Thomas J. Campbell to point out and show to him the line between him, Campbell, and said A. S. Core and Van Winkle.   Said Thomas J. Campbell came down to the railroad by the culvert, and pointed out the line between him and A. S. Core and Van Winkle, in the following manner :  ' By extending on either side of him his arms in the direction of a sugar tree and white oak,' stating that that was the line between them, and if he, Alexander Core, cut any timber within that line it was all right, but that said Campbell did not point out said trees as being on the line, nor could the same be done from where they were.   Witness further testified in this connection, that his object in asking Thomas J. Campbell to point out his line was, ' that

I did not want to trespass on Campbell's land.' Witness further testified that afterwards, in the spring of 1860, he moved on Campbell's place, and whilst there he cleared a portion of this land, he had gotten staves and cross-ties from, fenced it and cultivated it, and got it from Andrew S. Core; which was controverted by plaintiffs' witnesses. And thereupon, before the jury retired to their chamber to consider of their verdict, the counsel for the defendant asked the court to instruct the jury as follows: 'That if the jury believe from the evidence that Campbell, the ancestor, in his lifetime represented to and claimed up to the line spoken of by the witnesses, Alexander Core, and Hissem, and that he made such declaration in good faith, and not by mere mistake, but with the full knowledge as to where his line ran, such declarations and admissions on his, Campbell's, part are an estoppel to him and those claiming under him to claim any other line.' The giving of which instruction so asked by defendants' counsel, the court refused and did not give the same to the jury. Whereupon, the defendants excepted to the ruling of said court in refusing to give said instruction to the jury and tendered their bill of exceptions, and asked that the same may be signed, sealed and saved to them, and made a part of the record in this cause, which is accordingly done.

"JAMES M. JACKSON. [Seal]."

The plaintiffs in this cause do not claim said land in the declaration demanded, as the widow and legal heirs of Thomas J. Campbell. Bill of exceptions No. 4, in no manner shows that the plaintiffs in this suit in any way claim the land in controversy under or through Thomas J. Campbell, and we are not authorized to look into any other bill of exceptions filed in this cause, in aid of bill of exceptions No. 4, as bill of exception No. 4 makes no reference to any other bill of exceptions, and there is no bill of exceptions in the cause certifying or purporting to certify all the evidence given at the trial. See *Hall*

v. *Hall,* from Ritchie county, decided at the present
term of this Court, and authorities there cited. There is
nothing by reason of the premises appearing in this bill
of exceptions showing a tendency to prove that the acts
and declarations of Thomas J. Campbell, detailed by a
witness in bill of exceptions No. 4, were or could be in
the least-binding on the plaintiffs. For this reason the
said last named instruction was irrelevant and improper
to be given to the jury, as tending to confuse and mislead
the jury. *Fitzhugh's ex'or* v. *Fitzhugh,* 11 Gratt. 300;
*Kicheloe* v. *Tracewell,* 11 Gratt. 587. Again, there is no
evidence in the cause tending to prove that at the time
of said acts and declarations, detailed in said bill of ex-
ceptions, said Thomas J. Campbell had in fact full
knowledge as to where his line ran, and that said acts
and declarations, though made in good faith, were not
by mere mistake. The instruction for this reason might
properly have been refused by the court below. The
instruction as asked not being shown by said bill of ex-
ceptions to be relevant and proper to be given, it was
not error in the court to refuse to give the instruction
asked. An instruction of this description should not be
given to the jury unless it was relevant to the case before
the jury, and its relevancy not appearing in this case,
this Court will presume that the court below rightfully
refused to give it. As the instruction asked was prop-
erly refused, so far as we can see, it is deemed immaterial
and unnecessary now to determine whether said instruc-
tion propounds the law correctly in the case it supposes.

*As to the defendants' fifth assignment of error.* It has
not been claimed or argued before us, that the verdict is
defective or insufficient, or in any respect not substan-
tially according to law in such cases. I see no error in
the verdict of the jury, though I have not examined it
with that closeness and elaboration I should have done,
if any objection had been suggested or pointed out in it.
The judgment rendered by the court on the verdict is
not entirely formal perhaps; but our attention has not

been called or directed to any defect in it whatever by counsel; and from the examination I have given to it, I see no defect therein prejudicial to the defendants, or of which they can complain here. The defendants failed to file a bill of exceptions to the opinion and judgment of the court in overruling their motion, made to the court to set aside the verdict and grant a new trial; and the court has neither certified all the evidence given, or the facts proven at the trial, and it does not appear that the defendants asked the court to do so.

Under these circumstances, this Court will presume that the opinion and judgment of the court in overruling the defendant's motion to set aside the verdict and grant a new trial, was right and proper, the contrary not appearing. *Gunn et al* v. *Turner's adm'r*, 21 Gratt. 382. If exceptions had been taken to the opinion and judgment of the court for refusing to set aside the verdict and grant a new trial, and all the evidence given or facts proven at the trial had been certified therein, and it had appeared therein that part of the defendants were infants, I should have felt disposed to reverse the judgment of the court, and set aside the verdict on that account, and made such other orders in the case as would be proper in such case; but as the opinion and judgment of the court in refusing to set aside said verdict, and grant a new trial, was not excepted to, and all the evidence given or facts proven at the trial are not certified, I do not feel that we are authorized to do so, as this case is presented to us. I confess that I am unable to see from this record, or otherwise, any legitimate or proper purpose, for which the infancy of any of the defendants should have been admitted or received as evidence at the trial before the jury. I see no bearing it could have had upon the issue. But it was the duty of the plaintiffs to cause a guardian *ad litem* to be appointed to defend the suit for the infant defendants, (if such they were), at the proper time before the trial; and his failure to do it, was at his own risk and

peril and must be considered and so held in any proper proceeding to reverse the judgment, &c. If any of the defendants are in fact infants, or were so during the pendency of the suit, the parties must be remitted to their remedy in such cases provided by law, by writ of error *coram nobis,* or motion under section 1, chapter 134 Code of West Virginia of 1868. I do not regard the question as to whether a part of the defendants were infants at the commencement of this suit, and during a part or the whole of the proceedings in the cause as being properly before this Court. The 6th section of chapter 134 provides that "no appeals, writ of error, or *supersedeas,* shall be allowed or entertained by an appellate court, or judge, for any matter, for which a judgment or decree is liable to be reversed or amended on motion by the court which rendered it, or the judge thereof, until such motion be made and overruled in whole or in part. As before seen and stated, the 1st section of chapter 134 of the Code of this State provides that for any clerical error, or error in fact, for which a judgment or decree may be reversed or corrected on writ of error *coram nobis,* the same may be reversed or corrected on motion, after reasonable notice by the court, or by the judge thereof in vacation. *Cole* v. *Pennell,* &c., 2 Randolph, 174; 1st vol. Mathews Digest, 283, note 2, and authorities there cited; 2d vol. Tucker's Commentaries, chapter 19, pp. 322 & 323, under head of error *coram nobis; Reid* v. *Strider,* 7 Gratt. 76; *Gunn et al.* v. *Turner's adm'r,* 21 Gratt. 382. It is true that section 36 of chapter 91 of the Code of this State, p. 522, provides that if any person, against whom a judgment in ejectment is rendered, shall be at the time of the judgment an infant, married woman, or insane, the judgment shall be no bar to an action commenced within five years after the removal of such disability. This section, it seems to me, is not intended to dispense with the necessity of appointing a guardian to defend for infants in suits brought against them, but applies to judgments against

infants, whether they have appeared and defended the case by guardian or not. No proceeding appears to have been taken in the court below by the defendants or any of them, to reverse or amend said judgment under said 1st section of chapter 134 of the Code, or otherwise. For the foregoing reasons, the defendants' said fifth assignment of error is not well taken, and the same is overruled.

For the reasons hereinbefore stated, there is no error in said judgment for which the same should now be reversed by this Court, and the same is affirmed with costs and $30.00 damage to the defendants in error. But the affirmation of said judgment by this Court is without prejudice to the right of the plaintiffs in error or any of them to move said circuit court or the judge thereof, if so advised, to reverse or amend the original judgment against them in the case, upon the ground (if such be the fact) that some of the defendants were infants during the pendency of the said case, in which said original judgment was rendered, and no guardian *ad litem* was appointed for them in said suit, and also without prejudice to the right of the plaintiffs in error, if so advised, to proceed by writ of error *coram nobis* for the reversal of said original judgment upon the grounds aforesaid, if such grounds be well founded.

JUDGES MOORE, JOHNSON and GREEN concurred.

JUDGMENT AFFIRMED.