# CHARLESTON.

STATE v. HARVEY A. MILLER *et al*

Submitted May 6, 1919.   Decided May 13, 1919.

1. PUBLIC LANDS—*Patents to Entrymen—Constitutional Law.*

    The several Acts of the Legislature providing for the issuance
    of patents to entrymen who, prior to the formation of this State,
    had made entries and surveys of lands included within its boun-
    daries, under the laws of the State of Virginia, are not in violation
    of any of the provisions of the Constitution. (p. 177).

2. SAME—*Patent Procured by Fraud—Cancellation—Sale for Bene-
    fit of School Fund.*

    Where such a patent was procured by fraud, or without compli-
    ance on the part of the patentee with some of the material re-
    quirements of the law, such patent might be cancelled and annulled
    upon a bill in equity filed by the State, or by any other interested
    party for that purpose, but until the same is so cancelled and an-
    nulled such land cannot be proceeded against to subject the same
    to sale for the benefit of the school fund as waste and unap-
    propriated. (p. 181).

3.  Same—*Patents—Suit to Cancel—Limitation.*

    A suit for the purpose of cancelling such a patent must be brought within ten years from the date thereof, and this Statute of Limitation applies to a suit brought for that purpose by the State, as well as to one brought by an individual whose interests are involved. (p. 181).

Appeal from Circuit Court, Randolph County.

Bill by the State of West Virginia against Harvey A. Miller and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*Neil Cunningham* and *A. M. Cunningham,* for appellant.
*Morton & Wooddell,* and *E. A. Bowers,* for appellee.

Ritz, Judge:

This suit was instituted for the purpose of subjecting to sale, for the benefit of the school fund, as waste and unappropriated, a tract of 6800 acres of land lying in the counties of Randolph, Pocahontas and Webster. It is shown by the bill that this tract of land was on the 2nd day of July, 1854, located by John W. Warwick, Jacob Warwick and William F. Strong, by virtue of land office treasury warrant No. 20505 for 1000 acres, and land office treasury warrant No. 20477 for 6000 acres, both of which land warrants had been theretofore issued by the Commonwealth of Virginia; that after said location was so made under said land warrants, the interested parties, on the 2nd of August, 1854, caused said land to be surveyed; that this entry and survey, at the time of the formation of the State of West Virginia, had not been carried into grant; that the said John W. Warwick, subsequent to the said survey, assigned his interest therein to Homer A. Holt, and the said William F. Strong assigned his interest therein to Bernard Mollohan who, in turn, assigned the same to Charles P. Dorr. These parties, together with Jacob Warwick, one of the original entrymen, applied to the Governor of West Virginia for a patent to be issued to them under the provisions of the Act of the Legislature of 1883, and on the 4th of January, 1884, upon the

presentation and filing of what was determined to be proper plats, surveys, certificates and affidavits, the Governor issued to Jacob Warwick, Homer A. Holt and Charles P. Dorr a patent for this 6800 acres of land. It is not charged in the bill that there has been any forfeiture under this patent since that time. The rights of said Warwick, Dorr and Holt under said patent are now vested in the defendant Cherry River Boom & Lumber Company, a corporation. It is charged in the bill that this grant of January, 1884, is void, and that no title of the State of West Virginia ever passed thereby, wherefore the land, being unoccupied and uncultivated, is waste and unappropriated, and subject to sale for the benefit of the school fund. A demurrer to the bill and amended bill having been sustained, the State brings the case here for review.

The principal ground upon which it is insisted that said patent is void is that the Act of 1883, under the authority of which it was granted, is in violation of § 2 of artitle 13 of the Constitution of 1872, as well as § 2 of article 9 of the Constitution of 1863. In addition to this principal ground, it is further alleged that said patent was obtained by the presentation of false and fraudulent evidence of the payment of taxes on said land for five years prior to the issuance of said patent, and certain other irregularities in the procedure are also pointed out which it is claimed avoid the patent. The chief reliance of counsel for the State is that the Act of 1883, under which this patent was issued, is void as being in violation of the constitutional provisions above referred to. Section 2 of article 9 of the Constitution of 1863 is: "No entry by warrant on land in this State shall be hereafter made; and in all cases where an entry has been heretofore made and has been or shall be so perfected as to entitle the locator to a grant, the Legislature shall make provision by law for issuing the same." It will be noticed that this section provides that thereafter no entry shall be made upon land in this State by warrant, but it saved to entrymen the rights theretofore acquired by them by virtue of entries and surveys made prior to the adoption of that constitution, and further provided that the legislature should make provision

for issuing patents to carry such surveys and entries into grant. In addition to the reservation made in this section in favor of prior entrymen, § 1 of that article specifically recognized all private rights and interests in lands derived from or under the laws of the State of Virginia prior to the time the constitution of 1863 went into effect. That section is as follows: "All private rights and interests in lands in this State, derived from or under the laws of the State of Virginia, prior to the time this Constitution goes into operation, shall remain valid and secure, and shall be determined by the laws heretofore in force in the State of Virginia." It will be noticed by reference to the provisions of § 2 of article 9 above quoted that it provided that the former practice of purchasing land warrants and entering public lands thereunder was terminated as to the future. It declared that in the future no entry by warrant should be made, but it is equally clear that this section, instead of terminating rights under entries theretofore made, expressly reserved them and required that the Legislature should make provision for the issuing of grants to those who had so far perfected their locations as to be then entitled to a grant, as well as to those who should thereafter so perfect their locations and surveys as to entitle them to grants. The contention is made here that at the time of the adoption of this constitutional provision the entrymen involved in this case had not so perfected their entry as to entitle them to a grant under the law of Virginia as it then stood. We do not think it is material whether this is true or not, as in our view of this constitutional provision it not only required that grants be issued to those who had so far advanced as to be entitled to them, but required that provision be made for maturing those entries which were not at that time in such condition as that grants could be properly issued thereon. It is not necessary to discuss in detail the several Acts of the Legislature passed to carry out these provisions. It suffices to say that provision was made for the issuance of grants to those who were, upon the formation of the State, entitled thereto under the laws of the State of Virginia, and also provided the means for maturing those entries which were not at that time so

far advanced as to entitle entrymen to grants. This required them to file their surveys and plats with the secretary of state with certain other proofs, and upon this being done the governor was authorized to issue a patent to the entryman. A great number of such patents were issued and quite a considerable amount of land in the State which had been located and surveyed prior to the formation of the State is now held under titles dependent upon such patents.

It is contended, however, that even if the Constitution of 1863 did permit the issuance of such grants, by the adoption of the Constitution of 1872 the issuance thereof for the future was forbidden. Section 2 of Article 13 provides: "No entry by warrant on land in this State shall hereafter be made." It will be noticed that there is no reservation in this section in favor of those parties who had made entries on lands prior to the formation of the State, as was the case in § 2 of article 9 of the Constitution of 1863, but that it was not the intention of the framers of this Constitution to destroy such inchoate rights is clearly evidenced by § 1 of the same article. That section is as follows: "All private rights and interests in lands in this State derived from or under the laws of the State of Virginia, and from or under the constitution and laws of this State prior to the time this constituion goes into operation, shall remain valid and secure and shall be determined by the laws in force in Virginia, prior to the formation of this State, and by the constitution and laws in force in this State prior to the time this constitution goes into effect." It will be noticed that under this section all private rights and interests in lands in this State derived prior to the formation thereof are protected and held inviolate, the same to be determined by the laws in force in Virginia prior to the formation of this State, and by the constitution and laws in force in this State prior to the time this constitution goes into effect. There is no trouble about the meaning of this provision when it is read in the light of the conditions it was adopted to meet. It was appreciated at that time that there were entries and surveys made which had not been carried into grant, some of which were so perfected as to entitle entrymen to a grant at the

time of the formation of the State, others not so far advanced, and it is the clear purpose of this provision to save to those entrymen their rights or interests under such entries and surveys. As to the things which had been done prior to the formation of the State, they should be determined by the laws of Virginia in force at the time they were done. As to the things which were done after the formation of the State, they should be determined by the constitution and laws of the State of West Virginia in relation thereto, and it was to carry out the provisions of this section of the constitution, and save to those entrymen who had made entries and surveys prior to the formation of the State their rights and interests that the Act of 1883 was passed. It will thus be noticed that there is a clearly declared purpose and intent, both in the Constitution of 1863 and 1872, to save to all persons who had theretofore acquired a right in lands, the interest so acquired. In the case of *Ferguson* v. *Donnally*, 7 W. Va. 114, Judge HAYMOND discusses at length this declared intention of the constitution makers of this State to save these interests in lands acquired under the laws of the State of Virginia. In that case the interest claimed was one acquired under a purchase at a tax sale, and while it was not expressly saved to such purchaser, as is the case with those interests acquired by entry and survey, Judge HAYMOND held that by clear implication it was protected. We see nothing in the legislation passed, for the purpose of carrying into effect the constitutional provisions above referred to, that in any way transgresses the limits therein prescribed. The first of these constitutional provisions made it the mandatory duty of the legislature to provide for its enforcement, and while the constitution of 1872 did not in specific terms require the legislature to pass laws by which the interests referred to in § 1 of article 13 might be transferred to the entrymen, it was clearly the duty of the legislature to pass such laws as might be necessary to give effect to that constitutional provision. The validity of these laws so long relied upon and acquiesced in by the legislative, executive and judicial officers, as well as by the people of the State, will not be denied after such a long lapse of time, particularly

where valuable rights depend thereon, unless the reasons therefor are compelling. It is quite true that both the constitution of 1863 and that of 1872 declare against the policy of disposing of the State's land by entry and survey under a land warrant, but the exceptions made in favor of those who had thertofore made entries and surveys is just as clear as the declaration against the future disposition of the State's land by entries of that character.

There are several other grounds upon which it is contended that the patent issued in this case is invalid. It is said that the survey and entry was never recorded, as provided by the Virginia law; that the tract of 6800 acres of land was never entered upon the land books, and no taxes paid thereon prior to the issuance of the grant, and that the evidence introduced to prove that such was the case was false and fraudulent. There are some other particulars pointed out in which it is contended the patentees, or their assignors, did not comply with the full requirements of the law in matters of procedure. As to all of these matters the duty rested upon the executive officers to determine them when the patent was issued. The most serious of the contentions made is that the affidavit by which it was shown that the taxes had been paid for five years was in fact false, and that no such taxes had been paid. Neither these nor the other matters relied upon are such as to render the patent void.

Undoubtedly under the provisions of § 12 of chapter 68 of the Code, which has been the law in this State and in the State of Virginia for many years, the State or any other interested party might by a bill in equity procure the cancellation of such a grant for fraud in the procurement thereof, or because the same was issued without compliance with all the provisions of the law, or to the prejudice of any party's equitable rights. This section makes clear provision for getting rid of the grant where it had been procured by fraud, or where some of the matters required to be done had not been fully complied with. But where the grant has been issued by competent authority, until it is cancelled by such a suit its validity cannot be attacked collaterally. It may be

said, however, that the present suit is such a suit that it is broad enough in its scope to obtain relief by cancellation of this patent for the causes shown, but § 15 of ch. 104 of the Code provides that such a bill must be brought within ten years next after the date of such grant, and § 20 of ch. 35 of the Code makes every statute of limitation, unless otherwise expressly provided, apply to the State, so that, even though it be conceded that this patent was procured by fraud, and that there are irregularities in the proceedings leading up to its issue, which would justify its cancellation upon a bill for that purpose, it cannot be so cancelled in this case, for the reason that the statute of limitations has long since run against such a suit.

Finding no error in the decree of the circuit court, the same is affirmed.

*Affirmed.*